**UNITED STATES of America,**
**Plaintiff,**

v.

**Norman BAILEY and Emanuel St.**
**Eitenne, Defendants.**

**Cr. No. 30128.**

United States District Court
E. D. Louisiana,
New Orleans Division.

Nov. 24, 1965.

John C. Ciolino, Harry F. Connick, Frederick W. Veters, Asst. U. S. Attys.,

E. D. of Louisiana, New Orleans, La., for plaintiff.

Zelden & Zelden, Bruce Borrello, Sam Monk Zelden, New Orleans, La., for defendants.

AINSWORTH, District Judge.

This case involves the joint motion of Norman Bailey and Emanuel St. Eitenne to suppress evidence seized by agents of the Federal Bureau of Narcotics based on their allegation that the evidence was seized during the course of an unlawful arrest. They aver that the warrants for their arrest were improvidently issued for lack of probable cause and, alternatively, that the warrants were improperly executed and the evidence thus seized being the fruit of an unlawful arrest is inadmissible.

The arrest warrants issued on separate complaints filed by Agent Steadman of the Federal Bureau of Narcotics. The complaints filed with the United States Commissioner by the agent stated that the defendants sold a quantity of heroin hydrochloride to an informant and further that "the complaint is based on the fact that the transaction was witnessed by Agent Compton between the defendant and the informant of the Bureau of Narcotics on July 22, 1965." Arrest warrants were issued on September 7, 1965. St. Eitenne's apartment was placed under surveillance and on the evening of September 13, 1965, Norman Bailey was observed entering the apartment and about 15 minutes later, or at approximately 8:00 p. m., St. Eitenne arrived. The agents thus knew that both defendants were in St. Eitenne's apartment. Agent Chandler went to the rear door of the apartment, while Agent Compton and another agent went to the front door. Shortly thereafter both defendants were arrested and 150 capsules of heroin hydrochloride were found on top of a dresser in the bedroom where the arrest was made. It is this evidence which the defendants seek to suppress.

 On the basis of the evidence presented, we hold that there was probable cause for issuing the warrants. The test applied in determining whether or not probable cause exists for issuing an arrest warrant is the same provided for search warrants under the Fourth Amendment of the United States Constitution. See Giordenello v. United States, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958), and the authorities therein cited at page 1250. While a warrant may issue only upon probable cause, the term itself does not demand the same proof that would justify a conviction, and probable cause may rest upon evidence which would be incompetent in a criminal trial. United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). Hearsay may be the basis for issuing a warrant providing there is some basis for crediting the hearsay. Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). In Jones, the entire affidavit was supported by information supplied by an informant. However, the affiant there stated that the informer had given reliable information in the past and was corroborated by other informants.

 In the present case, the complaints upon which the warrants issued were not based solely upon information supplied by an informant. Agent Compton of the Narcotics Bureau witnessed the alleged illicit act between the informant and the defendants. This fact was stated in the complaint filed by Agent Steadman. Thus the Commissioner was presented with sufficient evidence to issue the arrest warrants. See Aguilar v. State of Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), where the court held that the affidavit need not reflect the direct personal knowledge of the affiant.

 Even should we hold that there was no probable cause to issue the arrest warrants, the arrest would still be valid without warrants under 26 U.S.C.A. § 7607(2). This Act gives narcotics agents authority to make arrests without a warrant for narcotic violations committed in their presence. As stated above, Agent

Compton witnessed the alleged transaction for which the warrants issued and was one of the officers participating in the arrest of both defendants. Ker v. State of California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963), Abramson v. United States, 5 Cir., 1964, 326 F.2d 565.

Therefore, we hold that the arrest warrants were validly issued in that probable cause existed within the meaning of the Fourth Amendment of the United States Constitution and that under the facts presented the arrest would have been valid even if made without arrest warrants.

In support of the defendants' allegation that the arrest warrants were improperly executed, they contend that neither agent knocked or announced his authority or purpose in seeking admission into St. Eitenne's apartment. Both defendants testified that they heard a rap on the door, and the next thing they knew, the agents entered with guns drawn and arrested them. They also testified that the locks on the front and rear doors were broken by the agents.

The agents testified to the contrary. Agent Chandler testified that he went to the rear entrance and found that the screen door was latched but the wooden inner door was wide open. He knocked and called "Hello" and upon receiving no response he broke the latch on the screen door and entered the apartment.[1] Chandler then proceeded to the bedroom with his gun drawn and there placed both defendants under arrest. It was at this time that the capsules of narcotics were observed on top of the dresser. Agent Compton's testimony was similar except that upon approaching the front entrance he observed that the screen door was unlatched and that the inner wooden door was wide open. His view of the apartment was thus unobstructed. Upon reaching the front door, Compton saw one Harold Lewis lying on the couch in the front room watching television and observed that the volume was loud.[2] Compton identified himself as a federal narcotics agent to Lewis who had started toward the front door but then turned and headed for another room whereupon Compton opened the unlatched screen door and stopped Lewis. It was while he was questioning Lewis that Compton heard Agent Chandler knock at the rear entrance and announce his presence, after which Chandler entered and arrested the defendants.

■ Under the facts and evidence presented we hold that the arrest warrants were properly executed. See Ker v. State of California, supra, where police officers, without any warrants, entered Ker's apartment by using a passkey and proceeded quietly into the apartment in order to prevent the destruction of evidence, which was marijuana The arrests were sustained and the marijuana held admissible.[3] While Ker involves an arrest

---

1. It must be remembered that the agents knew that both defendants were in the apartment. Thus upon receiving no response to his knock and announcement it would be reasonable for the agent to enter, without more, because for all he knew the defendants could have been engaged in the destruction of valuable evidence.

2. Both agents testified that the television set was on when they attempted to gain admission into the apartment and that the volume was loud. This was offered in explanation as to why the defendants may have not heard Agents Chandler and Compton knock and try to summon one of the occupants to let them enter.

3. Rule 4 of the Federal Rules of Criminal Procedure provides some regulations relative to the execution of arrest warrants but is silent in regard to the question of forcible entry. Thus we must look to state law regulating such entry. Ker v. State of California, 374 U.S. 23, 83 S.Ct. 1623 (1963), and the authorities there cited at page 1632. The statute of California used in Ker is almost identical to the controlling statute in Louisiana. Forcible entry to effect an arrest in Louisiana is to be found at LSA–R.S. 15:72 which provides:

"To make an arrest, a private person, if the offense be a felony committed in his presence, or a peace officer with a warrant or in cases of felony when authorized without a warrant, may break open an inner or outer door of any

without a warrant, the same test is applied to arrests made with a warrant. Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958).

While Miller gives a strict interpretation to 18 U.S.C.A. § 3109 which requires that before an officer resorts to forcible entry he must first state his authority and purpose for demanding admission, we hold that the evidence and facts of this case satisfy those requirements. The agents announced their presence. Clearly, Agent Compton was observed by Lewis who appeared to be attempting to flee, but Compton did not enter until he had announced his authority. Also upon entering, the way was not obstructed as both doors were open.

Furthermore, Miller, supra, acknowledges that there may be exigent circumstances which would justify a forcible entry without complying with the provisions of 18 U.S.C.A. § 3109. Indeed such extraordinary circumstances were sustained in Ker, supra, wherein the evidence was narcotics and the Supreme Court took cognizance of the ease with which such evidence may be destroyed. See footnote 3 in Ker at page 1627. Again in Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), the Court invalidated an arrest under 18 U.S.C.A. § 3109, but in so doing stated at page 415 of 83 S.Ct.:

> "Here, as in Miller, the Government claims no extraordinary circumstances—*such as the imminent destruction of vital evidence*, or the need to rescue a victim in peril * * *." (Emphasis supplied.)

■■ The present case involves narcotics, and the agents knew the defendants were trafficking in narcotics. It is true that the agents went to St. Eitenne's apartment to arrest him, but it is also reasonable to believe that they anticipated finding *additional* evidence. These were experienced agents, and they knew the various methods used and the ease with which narcotics may be destroyed by

building in which the person to be arrested is or is reasonably believed to

suspects. We do not mean to hold that law enforcement agents may merely enter an apartment, even of the most notorious suspect, without complying with 18 U.S.C.A. § 3109. Forcible entry into the dwelling of any citizen should be viewed with great caution. All we hold is that under the circumstances herein expressed, the agents complied with the law. In protecting the rights of all citizens we must not be blind to the problems which confront law enforcement agents.

The motion of the defendants to suppress is denied.

be if, after he has announced his purpose, he is refused admittance."