**UNITED STATES of America**

v.

**Theodore R. WATSON.**

**Crim. 1368–69.**

United States District Court
District of Columbia.

Dec. 11, 1969.

174

Donald Bucklin, Asst. U. S. Atty., Washington, D. C., for the United States.

David Lamb, Washington, D. C., for defendant.

## MEMORANDUM—ORDER

GASCH, District Judge.

On August 19, 1969, an indictment was returned against defendant Theodore R. Watson, charging him with second degree burglary (22 D.C.Code § 1801(b)) and grand larceny (22 D.C. Code § 2201). He has now moved to suppress certain evidence seized during a search of his home at 4243 Eads Street, N. E., on or about May 27, 1969, on the ground that the search warrant directing seizure of the items was invalid.

The circumstances surrounding the search complained of appear to be as follows:

On May 26, the owner of "Shirt Tails, LTD," a men's clothing store located at 3182 Mt. Pleasant Street, N. W., reported that his store had been burglarized and that assorted men's clothing valued at about $15,000.00 had been taken. At about noon the next day, May 27, the detective to whom the case was assigned interviewed the owner at his clothing store. During the interview, the owner expressed the view that the defendant— an ex-employee—was probably implicated in the offense, and suggested that he and the detective drive to defendant's home and confront him with the owner's suspicion. The detective agreed.

Before they left, the owner attempted to telephone defendant's apartment to make certain defendant was at home, but received only a busy signal. Apparently assuming that defendant was indeed there, the owner and the detective then proceeded to drive to defendant's home, a distance of several miles. When they arrived—at about 2:00 P.M.—the owner went up and knocked on the front door. The detective remained in the car. Upon receiving no answer, the owner went around to the rear of the building where he observed an open trash can which contained, among other abandoned trash, a traffic violation notice sent to the defendant by the Metropolitan Police Department. He reported this to the detective, who by telephone checked with Police Department files and found that defendant was wanted on six traffic warrants. The detective then went to the door himself, knocked, and announced his identity and purpose. Again, there was no response. The detective testified, however, that he could hear radio or television sounds within the apartment.

Both men then proceeded to the rear of the building, and entered the premises by breaking a pane of glass in the back door. According to the detective's testimony, his only purpose in breaking in was to arrest defendant on the traffic warrants.[1] Once inside, they searched the premises for defendant, but the apartment proved to be unoccupied. In the course of that search, however, they discovered several new and unused shirts

---

1. See Hill v. United States, 418 F.2d 449 (D.C.Cir. November 7, 1968); Hutcherson v. United States, 120 U.S.App.D.C. 274, 345 F.2d 964 (1964); Taglavore v. United States, 291 F.2d 262 (9th Cir. 1961).

bearing labels and price tags from the owner's store in one of defendant's closets. They did not, however, seize the contraband at that time. Rather, the detective first left the building and obtained a search warrant for the premises. He returned at 5:45 P.M. the same day, armed with the search warrant, and only then seized the evidence which defendant now seeks to suppress.

 A search warrant issued on the basis of information which has been obtained other than by lawful means is not a valid warrant. Consequently, a defendant is entitled to have suppressed any items seized during the execution of such a warrant, unless the finding of probable cause underlying the warrant was based upon other "untainted" information which alone would have supported the finding of probable cause. James v. United States, 418 F.2d 1150 (D.C.Cir. June 20, 1969). Therefore, if the detective's initial entry into defendant's home was unlawful, as defendant argues, then the search warrant—issued on the basis of his observations while inside the apartment—was invalid, and the evidence seized pursuant to that warrant must be suppressed.

 The manner of entry into a house to execute search warrants is governed by 18 U.S.C. § 3109. That section provides:

> The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, *he is refused admittance* or when necessary to liberate himself or a person aiding him in the execution of the warrant. (Italics supplied.)

The validity of an entry to execute an arrest, either with or without a warrant, is tested by criteria identical to those embodied in Section 3109. Miller v. United States, 357 U.S. 301, 306, 78 S. Ct. 1190, 2 L.Ed.2d 1332 (1958); Garza-Fuentes v. United States, 400 F.2d 219 (5th Cir. 1968); Jackson v. United States, 354 F.2d 980 (1st Cir. 1965).

An officer cannot break into a house to effect an arrest, then, unless he first (1) identifies himself as a police officer, (2) states his purpose, and (3) is refused admittance. This case presents the question whether entry pursuant to an arrest warrant by breaking is permissible when the residence is unoccupied, or when the officer does not have reasonable cause to believe that it is occupied.

 When an officer knocks on the door of a house which he has reason to believe is unoccupied, he cannot reasonably conclude that he has been "refused admittance" when he receives no response. Since Section 3109 makes refusal of admittance a prerequisite to a forcible entry, it would seem that the officer cannot break into the house in such a situation. But should the criteria of Section 3109 even apply when no one is in the house? In that circumstance, the statutory formalities—announcement of authority and purpose—are merely futile gestures.

 An officer seeking entry in order to effect an arrest cannot accomplish his task if the person he is looking for is not inside. Consequently, absent consent, the officer cannot enter by any means, breaking or otherwise, unless he has reasonable cause to believe the defendant is within. Palmer v. United States, 192 A.2d 801 (D.C.Mun.App. 1963). See United States v. Sims, 231 F.Supp. 251, 254 (D. Md. 1964). Nor can he enter to search for evidence, for he does not have a search warrant for that purpose. Camara v. Municipal Court etc., 387 U.S. 523, 528–529, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967); Accarino v. United States, 85 U.S.App.D.C. 394, 179 F.2d 456 (1949). Neither does it matter that in the instant case the detective possessed a traffic warrant for defendant's arrest. An arrest warrant is issued solely upon a finding of probable cause to believe that a crime was committed and that the defendant committed it. The magistrate does not, in addition, determine that there is proba-

ble cause to believe the defendant can be found at a particular place. Accordingly, an arrest warrant does not give the police power to enter an individual's home unless they have reasonable cause to believe it is occupied.[2]

The question before the Court, then, in the first instance is whether the detective had reasonable cause to believe that defendant was in the apartment. If he did not, then he was not entitled to enter. If he did have reasonable cause to believe the defendant was inside, the Court must then determine whether he had been "refused entry" within the meaning of Section 3109, so that entry *by breaking* was justified.

██ It is not necessary to reach the latter question, for the Court concludes that, on the basis of the known facts, the detective did not have reasonable cause to believe that the defendant was in the house or, indeed, that the house was occupied by anyone. When the detective knocked on the door, the only positive indication that someone might have been inside was the noise from the radio. He did not hear sounds of any other activity. Likewise the owner received no response when he knocked on the door a few minutes earlier. Indeed, neither man observed any activity or persons inside, although they were present for several minutes before they went in through the rear door. Furthermore, although a telephone call to defendant's number indicated a "busy" signal, that information had little probative value at the time entry was effected. In these circumstances, the Court is unable to find that the detective had reasonable cause to believe the defendant was at home.

Since this is so, it follows that the detective was not "refused admittance" within the meaning of Section 3109. Moreover, even if there had been reasonable cause to believe that the defendant was inside, it is questionable that the circumstances here were sufficient to amount to a refusal of entry. It is of course true that "it would be an unusual case * * * where an occupant affirmatively 'refused admittance' or otherwise made his refusal known verbally after being given notice pursuant to § 3109." Masiello v. United States, 115 U.S.App.D.C. 57, 317 F.2d 121 (1963). Nonetheless, in the cases the Court has examined, something more than mere lack of response has usually been present —e. g., a commotion in the house,[3] observation of an occupant of the house fleeing,[4] or sounds of footsteps.[5]

Since the detective's entry into the house cannot be regarded as based on probable cause that defendant was

2. The same is not necessarily true where entry is sought to execute a search warrant. It appears to be fairly well settled that statutes requiring notice of purpose and authority and refusal of admittance prior to forced entry presuppose the presence of someone on the premises and do not apply when the premises are not occupied. Thigpen v. State, 51 Okl.Cr. 28, 299 P. 230 (1931); People v. Johnson, Gen.Sess., 231 N.Y.S.2d 689, aff'd, 245 N.Y.S.2d 311 (App.Div.1963); Collins v. State, 184 Tenn. 356, 199 S.W.2d 96 (1947); 79 C.J.S. Searches and Seizures § 83, at p. 906. The same conclusion concerning entries to execute *search* warrants has been reached under Section 3109, United States v. Hawkins, 243 F.Supp. 429, 432 (E.D.Tenn.1965).

This distinction between entries to effect arrests and those to conduct searches is a logical one. When an officer seeks to execute a search warrant, it is immaterial to completion of his task whether the occupant of the house is or is not at home. He can accomplish the task authorized by the magistrate just as effectively in either case. Moreover, when the magistrate issues a search warrant, he makes an express determination that there is probable cause to believe that the contraband can be found in the residence to be searched.

3. United States v. Augello, 368 F.2d 692 (3d Cir. 1966); Masiello v. United States, 115 U.S.App.D.C. 57, 317 F.2d 121 (1963).

4. Palmer v. United States, 192 A.2d 801 (D.C.Mun.App.1963).

5. McClure v. United States, 332 F.2d 19 (9th Cir. 1964). But see United States v. Bailey, 247 F.Supp. 883 (D.La.1965); United States v. Freeman, 144 F.Supp. 669 (D.D.C.1956).

present and because the finding of probable cause encompassed in the search warrant was predicated upon the "tainted" information gathered in the prior entry, the subsequent search and seizure pursuant to the search warrant were unlawful. Consequently, defendant's motion to suppress must be granted.

So ordered.