**NEW ENGLAND POWER COMPANY, Petitioner,**

v.

**FEDERAL POWER COMMISSION, Respondent.**

**INDEPENDENT NATURAL GAS ASSOCIATION OF AMERICA, Petitioner,**

v.

**FEDERAL POWER COMMISSION, Respondent.**

**TENNESSEE GAS PIPELINE COMPANY, A DIVISION OF TENNECO INC., Petitioner,**

v.

**FEDERAL POWER COMMISSION, Respondent.**

Nos. 71–1439, 71–1539 and 71–1555.

United States Court of Appeals, District of Columbia Circuit.

Argued April 20, 1972.

Decided Aug. 15, 1972.

Rehearing Denied Sept. 25, 1972.

warrant to arrest someone they have reason to believe is "involved in a narcotics operation." (Tr. of March 25, 1971, pp. 14, 16.)

Mr. William J. Madden, Jr., Washington, D. C., with whom Mr. Thomas M. Debevoise, Washington, D. C. was on the brief, for petitioner in No. 71–1439.

Mr. Stanley M. Morley, Washington, D. C., with whom Messrs. Francis H. Caskin, Edward A. Caine and Jerome J. McGrath, Washington, D. C., were on the brief, for petitioner in No. 71–1539.

Mr. Melvin Richter, Washington, D. C., with whom Mr. Harry S. Welch, Houston, Tex., was on the brief, for petitioner in No. 71–1555.

Miss Joan E. Heimbigner, Atty., F.P. C., for respondent. Messrs. Gordon Gooch, Gen. Counsel, F.P.C., Leo E. Forquer, Sol., J. Richard Tiano, First Asst. Sol., and William P. Diener, Asst. Sol., F.P.C., were on the brief, for respondent.

Before TAMM, ROBB and WILKEY, Circuit Judges.

TAMM, Circuit Judge:

■ In this case several representative of the natural gas pipeline and electric industry petition the court to review and set aside Federal Power Commission Order No. 427 revising existing fee schedules for filing applications under the Natural Gas Act and Federal Power Act and assessing annually the costs of administering these programs against jurisdictional companies in accordance with formulae set forth in the order. Petitioners attack both the Commission's authority to impose the fees in question and the methods employed by the Commission in allocating the fees and charges. Since it is our view that the Commission lacked statutory authority to act, we pretermit consideration of the latter issue and accordingly grant petitioners the relief they seek.

I. *The Order*

On March 18, 1971, the Commission issued Order No. 427, which (a) revised a schedule of filing fees originally promulgated in a 1966 rulemaking proceeding [1] for certain applications by natural gas companies pursuant to the Natural Gas Act; [2] (b) established for the first time a schedule of filing fees for various applications and rate schedule filings made by electric utilities pursuant to Parts II and III of the Federal Power Act; [3] and (c) established, also for the first time, a system whereby the costs of administering Parts II and III of the Federal Power Act and the Natural Gas Act, not met by filing fees, will be annually assessed against jurisdictional companies in accordance with formulae set forth in the order. Petitioners do not complain of the increased filing fees under the Natural Gas Act nor of the new fees under the Federal Power Act, but, rather, the nub of their complaint goes to the annual charges assessed. We therefore must examine them in greater detail.

The Commission imposed two types of annual charges upon pipeline companies. The first type, denominated an "annual general charge," imposed only upon Class A and Class B pipeline companies,[4]

---

1. Order No. 317, 35 F.P.C. 30. The 1966 order stated that applications seeking specific authorizations required by the Natural Gas Act must be accompanied by a nominal $50 filing fee. Furthermore, fees were imposed for pipeline applications for certificates of public convenience and necessity based upon the higher of the estimated or actual cost of particular pipeline projects.

2. 15 U.S.C. § 717 (1970) et seq.

3. 16 U.S.C. § 824 (1970) et seq.

4. Interstate natural gas pipeline companies are classified for accounting and reporting purposes in the Commission's Uniform System of Accounts according to the amount of their annual gas operating revenues as follows:
   Class A—$2,500,000 or more
   Class B—$1,000,000 to $2,500,000
   Class C—$150,000 to $1,000,000
   Class D—$25,000 to $150,000

is computed as follows: Initially, the Commission determines the cost of administering its pipeline programs, subtracting therefrom the revenues derived from its first flat filing and pipeline certificate fees. The resultant net cost is recorded against a particular Class A or B pipeline based upon the ratio of its total jurisdictional gas deliveries to the total jurisdictional gas deliveries of all Class A and B pipelines. The second annual charge, denominated the "annual reserves added assessment," is imposed upon pipeline companies required to file an Annual Report—Total Gas Supply on FPC Form No. 15. The assessment is one-tenth of a mill for each Mcf of new reserves certificated for a particular calendar year as shown on that particular pipeline's Form No. 15.

The annual charge imposed upon jurisdictional electric utilities is computed as follows: A determination is made for each year of the administration costs of the Commission's public utility regulatory programs (other than those associated with coordination and reliability) from which is deducted the costs associated with services rendered to or for the benefit of electric systems which are not public utilities as defined in the Federal Power Act and the amounts received during the same period as filing fees. The "adjusted cost" is then assessed against each public utility in the proportion that the sum of the gross jurisdictional kilowatt hours it sells at wholesale and those it delivers under interchange power agreements bears to the sum of the gross jurisdictional sales by all public utilities. Furthermore, a determination is made of the Commission's cost of administration associated with its coordination and reliability programs which is then assessed against each public utility in the proportion that the gross revenues of such company bears to the sum of the gross electric revenues of all public utilities.

The authority upon which the Commission relied in its order assessing the foregoing annual charges and fees was Title V of the Independent Offices Appropriation Act of 1952.[5] In addition, the Commission now asserts before this court for the first time that it also bases its authority to act upon Section 16 of the Natural Gas Act [6] and Section 309 of the Federal Power Act.[7] We now turn to an examination of these statutes, the appropriate legislative history, the relevant administrative interpretations, and comparable statutes.

II. *Title V of the Independent Offices Appropriation Act of 1952*

A. *The Statute*

The Commission primarily bases its authority to impose the annual general charge upon Title V of the Independent Offices Appropriation Act of 1952, which provides in pertinent part:

It is the sense of the Congress that any work, service, publication, report, document, benefit, privilege, authority, use, franchise, license, permit, certificate, registration, or similar thing of value or utility performed, furnished, provided, granted, prepared, or issued by any Federal agency . . . to or for any person . . . shall be self-sustaining to the full extent possible, and the head of each Federal agency is authorized by regulation (which, in the case of agencies in the executive branch, shall be as uniform as practicable and subject to such policies as the President may prescribe) to prescribe therefor such fee, charge, or price, if any, as he shall determine . . . to be fair and equitable taking into consideration direct and indirect cost to the Government, value to the recipient, public policy or interest served, and other pertinent facts . . . .

The legislative history behind this proviso, a "rider" to the appropriations

---

5. 65 Stat. 290, 31 U.S.C. § 483a (1970).

6. 15 U.S.C. § 717o (1970).

7. 16 U.S.C. § 825h (1970).

bill, is sparse, but its purpose was made quite clear by the Report of the House Committee on Appropriations which we now set forth: [8]

The Committee is concerned that the Government is not receiving full return from many of *the services which it renders to special beneficiaries.* Many fees for such services are specifically fixed by law, and in some cases, it is specifically provided that no fees shall be charged. In other cases, however, no fees are charged even though the charging of fees is not prohibited; and in still others, fees are charged upon the basis of formulae prescribed in law, but the application of the formulae needs to be re-examined to bring the actual charges into line with present-day costs and other related considerations.

. . . . . .

The bill would provide authority for Government agencies to make charges for these services in cases where no charge is made at present, and to revise charges where present charges are too low, except in cases where the charge is specifically fixed by law or the law specifically provides that no charge shall be made. (Emphasis supplied).

■ As the foregoing legislative history makes clear, Title V was enacted to allow the agency to recoup costs from identifiable "special beneficiaries" where the services rendered inured to the benefit of special recipients not the general public. The statute has been consistently interpreted in this manner by the agencies of the executive branch of Government.[9]

B. *Agency Interpretation of Title V*

1. *Budget Circular No. A-25*

The standards and guidelines for application of Title V have been set forth by the Bureau of the Budget (now Office of Management and Budget) in Budget Circular No. A-25 of September 23, 1959, wherein the Bureau stated that a reasonable charge "should be made to each identifiable recipient for a measurable unit or amount of Government service or property from which he derives a special benefit." These services include agency action which "provides special benefits . . . above and beyond those which accrue to the public at large . . . . For example, a special benefit will be considered to accrue and a charge should be imposed when a Government-rendered service:

(a) Enables the beneficiary to obtain more immediate or substantial gains or values (which may or may not be measurable in monetary terms) than those which accrue to the general public (e. g., receiving a patent, crop insurance, or a license to carry on a specific business); or

(b) Provides business stability or assures public confidence in the business activity of the beneficiary (e. g., certificates of necessity and convenience for airline routes, or safety inspections of craft); or

(c) Is performed at the request of the recipient and is above and beyond the services regularly received by other members of the same industry or group, or of the general public (e. g., receiving a passport, visa, airman's certificate, or an inspection after regular duty hours)."

However, the Circular states no charge should be levied for services rendered "when the identification of the ultimate beneficiary is obscure and the service can be primarily considered as benefitting broadly the general public."

---

8. H.R.Rep.No.384, 82nd Cong., 1st Sess. 2-3 (1952).

9. Petitioners rely upon Aeronautical Radio, Inc. v. United States, 335 F.2d 304 (7th Cir. 1964), cert. denied, 379 U.S. 966, 85 S.Ct. 658, 13 L.Ed.2d 559 (1965), where the court upheld nominal filing fees upon certain types of radio license applications. However, in that case, unlike the instant one, the court was dealing with specific applications submitted to the Commission which conferred specific benefits upon the applicant.

The Commission urges that the annual charge comes within the terms of Circular No. A–25 because the charge relates to the cost incurred in discharging its "responsibilities in preventing the imposition of rates and charges which are unjust and unreasonable or preferential and prejudicial" and although such regulation "has provided continuing benefits to consumers," it has also

> redounded to the benefit of both industries by creating the economic climate for greater usage of the services of the regulated companies which in turn have further strengthened their financial stability and their ability to sell debt and equity securities required for capital additions to meet ever-increasing demands.

The Commission has, however, missed the point. The creation of an "economic climate" is not a special service nor is a particular pipeline or gas company the "special beneficiary" of such a climate any more than any other pipeline, gas company or the consumer in general. Indeed, under the Commission's order petitioners would be liable for the annual assessment despite the fact that they had no proceedings before the Commission for that year. In effect, then, the contemplated charges would have no relation to specific services or benefits rendered. The Commission must then fall back upon its "economic climate" argument which is obviously an overly broad benefit particularly in light of the requirement that the charges be for a "measurable unit of service." Furthermore, the statutory language—"to or for any person"—as well as the Budget Circular require an identifiable recipient. The Commission's inadequate response that the identifiable recipient is the whole industry assumes that each company receives a benefit directly proportional to revenue. This assumption is erroneous in that in any given year some companies may require substantial services from the Commission while others may neither require nor desire them.

▪ In sum, we conclude that the regulation of these industries is primarily for the benefit of the public. Their charter statutes require them to so act. The courts have so held.[10] There is something fundamentally wrong in assessing charges on the basis of benefit to the company when the Commission must benefit the public. In the absence of a clear Congressional mandate to the contrary, we conclude that monies for the administration of programs benefitting the general public should come from the general fund of the treasury. We are well aware of the burgeoning administrative expense of operating the Government, however, only Congress can give authority to levy these fees. It has not done so here.

### 2. *Federal Power Commission Order 317*

In Order 317, the original fee schedule imposed in 1966,[11] the Commission espoused a position precisely opposite from that which it now espouses, concluding that the charges at issue were general, and therefore without statutory foundation. We wholeheartedly concur in the Commission's earlier observation contained in the Notice of Proposed Rulemaking wherein the Commission stated:

> The Commission has reviewed its functions under . . . the Natural Gas Act and is of the opinion that the assessment of user charges or other fees with respect to the exercise of our regulatory activities under . . . the . . . rate and accounting provisions of the Natural Gas Act would not be appropriate since these

10. *See* Atlantic Refining Co. v. Public Service Commission of New York, 360 U.S. 378, 388–389, 79 S.Ct. 1246, 3 L.Ed. 2d 1312 (1959); Federal Power Commission v. Hope Natural Gas Co., 320 U.S. 591, 610–612, 64 S.Ct. 281, 88 L.Ed. 333 (1944).

11. *See* note 1, *supra.*

activities are primarily for the benefit of the general public rather than the regulated companies.[12]

### III. *Section 16 of the Natural Gas Act & Section 309 of the Federal Power Act*

■ The Commission asserts for the first time on appeal that it relies upon Section 16 of the Natural Gas Act [13] and Section 309 of the Federal Power Act [14] as authority for Order 427.[15] Although we view this as *"post hoc* patchwork," [16] we have considered and rejected the argument. Both sections are of an implementary rather than substantive character. The cases have made abundantly clear that while these provisions must be read in a broad expansive manner, they can only be implemented "consistently with the provisions and purposes of the legislation,"[17] and "that they authorize an agency to use means of regulation not spelled out in detail, provided the agency's action conforms with the purposes and policies of Congress and does not contravene any terms of the Act."[18] These sections merely augment existing

12. 30 Fed.Reg. 12077 (September 15, 1965).

13. The Commission shall have power to perform any and all acts, and to prescribe, issue, make, amend, and rescind such orders, rules, and regulations as it may find necessary or appropriate to carry out the provisions of this chapter. Among other things, such rules and regulations may define accounting, technical, and trade terms used in this chapter; and may prescribe the form or forms of all statements, declarations, applications, and reports to be filed with the Commission, the information which they shall contain, and the time within which they shall be filed. Unless a different date is specified therein, rules and regulations of the Commission shall be effective thirty days after publication in the manner which the Commission shall prescribe. Orders of the Commission shall be effective on the date and in the manner which the Commission shall prescribe. For the purposes of its rules and regulations, the Commission may classify persons and matters within its jurisdiction and prescribe different requirements for different classes of persons or matters. All rules and regulations of the Commission shall be filed with its secretary and shall be kept open in convenient form for public inspection and examination during reasonable business hours.
15 U.S.C. § 717o (1970).

14. The Commission shall have power to perform any and all acts, and to prescribe, issue, make, amend, and rescind such orders, rules, and regulations as it may find necessary or appropriate to carry out the provisions of this chapter. Among other things, such rules and regulations may define accounting, technical, and trade terms used in this chapter; and may prescribe the form or forms of all statements, declarations, applications, and reports to be filed with the Commission, and information which they shall contain, and the time within which they shall be filed. Unless a different date is specified therein, rules and regulations of the Commission shall be effective thirty days after publication in the manner which the Commission shall prescribe. Orders of the Commission shall be effective on the date and in the manner which the Commission shall prescribe. For the purposes of its rules and regulations, the Commission may classify persons and matters within its jurisdiction and prescribe different requirements for different classes of persons or matters. All rules and regulations of the Commission shall be filed with its secretary and shall be kept open in convenient form for public inspection and examination during reasonable business hours.
16 U.S.C. § 825h (1970).

15. The Commission's order does mention sections 16 and 309, however, not as substantive authority to prescribe fees, but merely as a point of reference to the source of the Commission's power to issue regulations implementing the basic grant of authority to charge the fees cataloged in Title V.

16. Braniff Airways, Inc. v. Civil Aeronautics Board, 126 U.S.App.D.C. 399, 411, 379 F.2d 453, 465 (1967).

17. Public Service Commission of New York v. Federal Power Commission, 117 U.S.App.D.C. 195, 198–199, 327 F.2d 893, 896–897 (1964).

18. Niagara Mohawk Power Corp. v. Federal Power Commission, 126 U.S.App. D.C. 376, 381, 379 F.2d 153, 158 (1967) (footnote omitted).

powers conferred upon the agency by Congress,[19] they do not confer independent authority to act.

## IV. *Comparable Statutes*

Putting aside Title V as authority for the order, it is highly significant that neither the Natural Gas Act nor Parts II or III of the Federal Power Act impose fees upon companies for regulation costs while Section 10(e) of the Federal Power Act explicitly requires licensees thereunder to pay annual charges "fixed by the Commission for the purpose of reimbursing the United States for the costs of administ[ering]" Part I of the Act.[20] The Congress could have, but did not set forth a provision similar to section 10(e) in the statutory sections here under review. Furthermore, many states have adopted statutes which authorize the local regulatory agency to recover from companies subject to their regulation the costs of administration either on a fixed-fee basis for specific services or as a percentage of some measure of size or value.[21] While it is clear that legislatures have the authority to so act, it is equally clear that Congress failed to do so here.

## V. *Conclusion*

For the foregoing reasons the order of the Commission under review is set aside with respect to the annual charges levied against petitioners.

---

19. *See also* Mesa Petroleum Corp. v. Federal Power Commission, 441 F.2d 182 (5th Cir. 1971).

20. 16 U.S.C. § 803(e) (1970). *See also* 16 U.S.C. § 803(f) (1970).

21. Subcomm. on Intergovernmental Relations of the Senate Comm. on Operations, 90th Cong., 1st Sess., State Utility Commissions 22 (Comm. Print September 11, 1967).