UNITED STATES of America,
Plaintiff-Appellee,

v.

Jerry R. BLAKE, Defendant-Appellant.

No. 79–1078.

United States Court of Appeals,
Ninth Circuit.

Submitted Jan. 29, 1980.

Decided Aug. 7, 1980.

Rehearing Denied Nov. 17, 1980.

Donald B. Ayer, Asst. U. S. Atty., San Francisco, Cal., for plaintiff-appellee.

Patricia V. Trumbull, Asst. Federal Public Defender, San Jose, Cal., for defendant-appellant.

Before TRASK, SNEED and ALARCON, Circuit Judges.

SNEED, Circuit Judge:

This is the second time this case has been before us. The central issue in both appeals has been the legality of the appellant's arrest in his residence by FBI agents acting without a warrant but with probable cause to arrest. Appellant in his first appeal sought to overturn his conviction on the ground that his arrest contravened the Fourth Amendment. Subsequent to the filing of this appeal this court decided *United States v. Prescott*, 581 F.2d 1343 (9th Cir. 1978), which held that a warrantless entry into a home for the purpose of making an arrest is improper except when required by exigent circumstances. Recognizing the possibility that *Prescott* was applicable to this case, we remanded it to the district court to determine the circumstances surrounding arrest. It found that the entry and arrest without a warrant was supported by exigent circumstances. It is from this determination that the appellant now brings his second appeal.

We hold that the district court's finding is clearly erroneous and that either *Prescott* or identical pre-*Prescott* law is applicable to this case with the result that appellant's warrantless arrest was invalid.

Therefore, we reverse the appellant's conviction.

## I.

## FACTS

The facts are simple and straightforward. On November 8, 1977, at about 3:15 p. m., appellant robbed the San Francisco Federal Savings and Loan Association at the Valley Fair Shopping Center in San Jose. Mixed with the money taken by the appellant were several bait bills. During the robbery, appellant was photographed by a bank surveillance camera.

The same afternoon, two FBI agents began to investigate the robbery. They learned that one week earlier a man matching the description of the robber had been stopped by a deputy sheriff in Santa Clara County on suspicion of "casing" a bank. The man, whose driver's license indicated that he was Jesse William Blake and was living on Mann Avenue in Union City, had been driving a tan 1976 Monte Carlo belonging to Budget Rent-A-Car in Oakland. The deputy sheriff had searched the car and discovered a pellet pistol under the seat. Also, a computer arrest check had revealed that at the time of a previous arrest Blake had given his address as 2713 Dowe Avenue in Union City.

The next day, November 9, FBI agents compared the bank surveillance photograph with the driver's license photograph of Jesse William Blake and determined that the bank robber was the same man who had been stopped by the Santa Clara deputy sheriff. They then went to the Budget Rent-A-Car in Oakland and found that the tan 1976 Monte Carlo presently was rented to a Carol Blake, whose address was in Hayward. When interviewed, Carol Blake told the agents that the man in the bank surveillance photograph was her husband, Jerry Blake, who, she said, was living with

another woman on Dowe Street in Union City. The agents then went to the Dowe Street address, arriving there sometime between 1:30 p. m. and 2:15 p. m., but observed that the Monte Carlo was not there. Leaving an officer from the Union City Police Department to watch the house, the agents went to the Mann Avenue address given on Blake's driver's license and then to the Union City Police Department. At about 2:30 p. m., the officer at the Dowe Street residence reported by radio that Blake and a woman had arrived in the Monte Carlo and had entered the house.

Without attempting to secure an arrest warrant, the agents then returned to the Dowe Street residence with several Union City police officers. The police personnel positioned themselves around the house, and one of the agents knocked at the door, announcing that he was from the FBI and was looking for Jerry Blake. When knocking brought no response, the agent began to kick the door. A woman then opened the door. The agent pulled her out onto the step, and both agents entered the house. They found appellant emerging from a bedroom and immediately placed him under arrest.

The agents searched appellant and found in his pocket a bait bill which had been taken from the bank. They then took appellant to the Union City police station and, after advising him of his *Miranda* rights, commenced to question him. Appellant at first denied knowledge of the robbery, but confessed after being confronted with the surveillance photograph and the bait bill. He also consented to a further search of the house, which turned up three more bait bills.

Before trial, appellant moved to suppress his confession and the bait bills on the ground that the agents had violated his Fourth Amendment rights by arresting him in his home without a warrant. The motion was denied, and the evidence was admitted at trial. Over his objection, three bank employees also identified appellant as the robber. The jury found appellant guilty and he appealed.

After considering appellant's contentions, this court, as already indicated, remanded the case to the district court to determine whether exigent circumstances, such as would cause a warrant to be unnecessary, were present. The district court found that exigent circumstances did exist. Appellant challenges that finding on this appeal.

## II.

### THE ARREST

In *United States v. Prescott,* 581 F.2d 1343 (9th Cir. 1978), we held that officers may not, absent exigent circumstances, enter a private dwelling to effect an arrest without obtaining a warrant. The Supreme Court pronounced the same rule in *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). Appellant contends that the government agents violated the *Payton-Prescott* rule and that evidence obtained as a result of the illegal entry and arrest should not have been admitted at trial. In response, the government asserts that the arrest was justified by exigent circumstances; alternatively, the government urges that the *Payton-Prescott* rule should not be applied retroactively to arrests that occurred before those cases were decided.

### A. *Exigent Circumstances*

In *United States v. Flickinger,* 573 F.2d 1349, 1355 (9th Cir.), *cert. denied,* 439 U.S. 836, 99 S.Ct. 119, 58 L.Ed.2d 132 (1978), this court explained that "[t]he term 'exigent circumstances,' in conjunction with an arrest in a residence, refers to a situation where the inevitable delay incident to obtaining a warrant must give way to an urgent need for immediate action." In this case, the district court's finding was based upon the court's assessment of criteria enunciated in *Dorman v. United States,* 435 F.2d 385, 392–93 (D.C.Cir.1970), *viz.,* the gravity of the crime which the suspect is believed to have committed, the reasonable belief that the suspect is armed, the degree of probable cause for the arrest, the likelihood that the suspect is in the premises, the risk of escape, the manner of entrance by the police.

We believe that assessment to be clearly erroneous. The crime committed by the appellant was serious but did not result in bodily injury to another. No weapon was used in its commission and the earlier discovery of a pellet gun in the car driven by the appellant provided only a weak inference that the suspect might be armed. It is true, of course, that the officer had a high degree of probable cause to arrest the appellant, but it is not clear that the officers had any substantial reason to believe that appellant would realize his apprehension was imminent and flee. As the facts indicate, the officers pursued their investigation in a measured and deliberate manner suggesting strongly that arrest was not thought to be required immediately upon the ripening of probable cause. There was no "hot pursuit." The entry of the officers required force.

More important than these considerations, however, is the fact that under the circumstances of this case the acquisition of a warrant would not have presented any great difficulty nor would have entailed the loss of any substantial amount of time. Indeed, the FBI agent who made the arrest testified that he knew that a warrant could have been obtained by telephone but, without discussing the decision with anyone and perhaps on the good faith belief that a warrant was not necessary, decided to make the arrest without a warrant. The arrest, it should be remembered, was made at about three o'clock on a weekday afternoon and was preceded by approximately an hour of surveillance. Although the fact that adequate time to obtain a warrant exists will not in every case foreclose resort to exigent circumstances to justify a warrantless arrest in a residence, it is true that the availability of such time requires a stronger showing with respect to the *Dorman* criteria than otherwise is necessary.

The facts of *Dorman* give weight to our conclusion that the district court was clearly erroneous in its finding of exigent circumstances. In the first place, the police in *Dorman* attempted to get a warrant but found that the magistrate was unavailable,

and at 9:00 p. m. on a Friday night it probably would have been quite time consuming to find a judge authorized to issue the warrant. Moreover, Dorman's robbery of a clothing store involved the use of a gun and the firing of one shot during the course of the robbery. The possibility of flight by Dorman was strong because he had left at the scene of the robbery documents bearing his name and address. It was likely that Dorman would soon realize his blunder and flee from his home. Finally, Dorman was arrested only four hours after the robbery, a circumstance indicating no delay of the police's "own making," *id.* at 393–94, and the entry was made peacefully and after the officers announced their purpose.

We acknowledge that a district court's finding of exigent circumstances should not be lightly rejected. *United States v. Flickinger*, 573 F.2d at 1356–57. To do so we must be "left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). However, when such a conviction exists it is no less our duty to reject the district court's finding than it is to accept that finding when it does not. In this case the required conviction exists. We, therefore, reject the district court's finding and hold that no exigent circumstances excusing a warrant existed in this case.

### B. Does Prescott Apply To This Case?

Our holding with respect to exigent circumstances requires that we confront the issue whether *Prescott* or *Payton* applies to the facts of this case. Neither *Prescott* nor *Payton* explicitly state that its holding that a warrant is required is not retroactive. Nevertheless, there exists Supreme Court authority indicating that under certain circumstances even a decision interpreting a constitutional command need be applied only prospectively. Where the decision establishes a new principle of law "either by overruling clear past precedent . . . or by deciding an issue of first impression whose resolution was not clearly foreshad-

owed," *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971), the criteria of *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 199 (1967), may permit only prospective application. These criteria are "(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards." *Id.* at 297, 87 S.Ct. at 1970.

■ The first of these criteria is the most critical. Thus, the Supreme Court has indicated that where the major purpose of a new constitutional doctrine is to enhance the truth-finding function of the trial, the doctrine should be applied retroactively regardless of its impact on the administration of justice. *Hankerson v. North Carolina,* 432 U.S. 233, 243, 97 S.Ct. 2339, 2345, 53 L.Ed.2d 306 (1977). Similarly, where retroactive application would not serve the purpose of the new rule, reliance and effect are not decisive considerations. *Desist v. United States,* 394 U.S. 244, 249–52, 89 S.Ct. 1030, 1033–35, 22 L.Ed.2d 248 (1969). These criteria become important "only when the purpose of the rule in question [does] not clearly favor either retroactivity or prospectivity." *Id.* at 251, 89 S.Ct. at 1035; *Brown v. Louisiana,* —— U.S. ——, 100 S.Ct. 2214, 2219, 65 L.Ed.2d 159 (1980).

■ That is frequently the case when the exclusionary rule is involved. The purpose of excluding evidence obtained in violation of the Fourth Amendment is to deter law enforcement officers from engaging in conduct which violates that Amendment's guarantees. This purpose generally is not served by retroactively applying constitutional rules to conduct which has already occurred and which, at the time it occurred, was thought to be permissible. *Linkletter v. Walker,* 381 U.S. 618, 636–37, 85 S.Ct.

1731, 1741–42, 14 L.Ed.2d 601 (1965). Thus, in *United States v. Peltier,* 422 U.S. 531, 535, 95 S.Ct. 2313, 2316, 45 L.Ed.2d 374 (1975), the Supreme Court observed:

> It is indisputable . . . that in every case in which the Court has addressed the retroactivity problem in the context of the exclusionary rule, whereby concededly relevant evidence is excluded in order to enforce a constitutional guarantee that does not relate to the integrity of the factfinding process, the Court has concluded that any such new constitutional principle would be accorded only prospective application.

*See also Williams v. United States,* 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971); *Desist v. United States,* 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969).

■ We readily acknowledge that these authorities could provide a basis for prospective application only of *Prescott* or *Payton* were we convinced that neither result was "clearly foreshadowed." At least with respect to *Prescott* we are compelled to acknowledge that its result was clearly foreshadowed. On two occasions prior to *Prescott* we indicated that a warrant very likely was required to legitimate an arrest within a residence based on probable cause in the absence of exigent circumstances. *See United States v. Calhoun,* 542 F.2d 1094, 1102 (9th Cir. 1976), *cert. denied,* 429 U.S. 1064, 97 S.Ct. 792, 50 L.Ed.2d 781 (1977); *United States v. Phillips,* 497 F.2d 1131, 1135 (9th Cir. 1974). In neither case was there a square holding to that effect, although in *Calhoun* both the government and the defendant apparently agreed that under such circumstances a warrant was required. In truth, as we indicated in *Prescott,* we avoided the issue repeatedly either by finding that probable cause to arrest was lacking or, when not lacking, that exigent circumstances existed.[1] Persistent avoid-

---

1. Before *Prescott,* this court had been presented with a number of cases in which law enforcement officers had arrested persons in their homes without warrants. Until 1972, the court focused on whether the officers had probable cause to make an arrest and whether the offi-

cers entered the residence only after announcing their identity and purpose and being denied admittance. *Williams v. United States,* 273 F.2d 781 (9th Cir. 1959), *cert. denied,* 362 U.S. 951, 80 S.Ct. 862, 4 L.Ed.2d 868 (1960); *Munoz v. United States,* 325 F.2d 23, 27 (9th Cir. 1963);

ance signifies judicial sensitivity to the issue avoided and should alert reasonable observers to the distinct possibility that it might be decided in due course in a manner adverse to their interests. This, we think, occurred prior to *Prescott* and constitutes a clear foreshadowing of that decision.

Support for this proposition also flows from an effort to establish the "law" of the circuit with respect to the question this case presents that "existed" prior to *Prescott.* Establishing such law would be essential were we to hold that *Prescott* was to be applied prospectively only. Given the fundamental source from which *Prescott's* holding is said to spring, the sanctity of the home in England immediately before the revolution, 581 F.2d at 1348, it is unlikely that the pre-*Prescott* "law" of this circuit can be said to have been other than as stated in *Prescott.* We say this although confident that many law enforcement agents prior to the *Prescott* decision believed and certainly hoped that a warrant was not necessary under facts such as presented in this case and *Prescott.* Their beliefs and hopes when acted upon entailed little risk to their endeavors in the light of the frequency with which exigent circumstances were found to exist. In any event, the best that can be said is that prior to

*Prescott* law enforcement officials knew that this circuit's law was unsettled but that there was some drift toward a warrant requirement. To announce at this late date that prior to *Prescott* there was no warrant requirement would be to refute *Prescott's* source and to ignore the drift that *Calhoun* and *Phillips* represent.

■ We choose to do neither. Therefore, we hold that *Prescott* should be applied retroactively, or, alternatively, that the "law" prior to *Prescott* was as announced by *Prescott.* Because of our reliance solely upon the law of this circuit, it is unnecessary for us to decide or comment upon the possible retroactivity of *Payton.* It follows that the appellant's motion to suppress was improperly denied and that his conviction must be reversed.

Reversed.

---

*Ng Pui Yu v. United States,* 352 F.2d 626, 631 (9th Cir. 1965); *Jack v. United States,* 387 F.2d 471, 473 (9th Cir. 1967), *cert. denied,* 392 U.S. 934, 88 S.Ct. 2299, 20 L.Ed.2d 1393 (1968); *United States v. Cisneros,* 448 F.2d 298, 304 (9th Cir. 1972). Though these decisions suggested that an arrest which satisfied the probable cause and announcement requirements was valid, they did not squarely confront the question of whether an arrest warrant was necessary.

In *Pineda v. Craven,* 327 F.Supp. 1062, 1070 (N.D.Cal.1971), a district court in this circuit considered the contention that in the absence of exigent circumstances a warrantless arrest in a home was improper, as the District of Columbia Circuit had held in *Dorman v. United States,* 435 F.2d 385 (D.C.Cir.1970). The district court did not decide the question because it concluded that even if *Dorman* were accepted in this circuit, its ruling would not be applied retroactively. This court affirmed on the basis of the district court's opinion. *Pineda v. Craven,* 465 F.2d 999 (9th Cir. 1972), *cert. denied,* 410 U.S. 932, 93 S.Ct. 1383, 35 L.Ed.2d

596 (1973). The next year, the court indicated that the permissibility of a warrantless arrest in a home was still an open question. *Williams v. Gould,* 486 F.2d 547, 548 (9th Cir. 1973). In the ensuing years, the court repeatedly declined to reach the issue, finding that the admission of evidence, even if erroneous, was harmless, *United States v. Masterson,* 529 F.2d 30, 31 (9th Cir.), *cert. denied,* 426 U.S. 908, 96 S.Ct. 2231, 48 L.Ed.2d 833 (1976), or, more commonly, that arrests were justified by exigent circumstances. *United States v. Bustamante-Gamez,* 488 F.2d 4, 8 (9th Cir. 1973); *cert. denied,* 416 U.S. 970, 94 S.Ct. 1993, 40 L.Ed.2d 559 (1974); *United States v. McLaughlin,* 525 F.2d 517, 520 (9th Cir. 1975), *cert. denied,* 427 U.S. 904, 96 S.Ct. 3190, 49 L.Ed.2d 1198 (1976); *United States v. Flickinger,* 573 F.2d 1349, 1354 (9th Cir.), *cert. denied,* 439 U.S. 836, 99 S.Ct. 119, 58 L.Ed.2d 132 (1978). Nonetheless, although the court did not have occasion to resolve the issue until *Prescott,* the decisions in *Phillips* and *Calhoun* suggested unmistakably that warrantless arrests in homes were impermissible.