STATE of North Dakota, Plaintiff
and Appellee,

v.

Brian PAGE, Defendant and Appellant.

STATE of North Dakota, Plaintiff
and Appellee,

v.

Randall PAGE, Defendant and Appellant.

Cr. Nos. 649 to 652.

Supreme Court of North Dakota.

March 15, 1979.

David L. Drey, State's Atty., and Carl O. Flagstad, Asst. State's Atty., Minot, for plaintiff and appellee; argued by Carl O. Flagstad, Minot.

Teevens, Johnson & Montgomery, Minot, for defendants and appellants; argued by Kent L. Johnson, Minot.

PEDERSON, Justice.

Brian Page and Randall Page appeal from four judgments entered on jury verdicts convicting each of them on separate charges of robbery and theft of property. The brothers were charged with the robbery of a large sum of money from Joe Smith of rural Sawyer, and theft of property belonging to Gilmore House of Beauty in Minot. We affirm.

In the early morning hours of February 20, 1978, two men went to Joe Smith's farm under the pretense of borrowing gas for their car, and then robbed him at gunpoint. One of the men carried a red gas can and both men were wearing snowmobile suits, light-colored gloves, and ski masks, which effectively concealed their identity. Shortly thereafter, Smith went to Sawyer and notified the Minot Police Department and the Ward County Sheriff's Office of the robbery.

Upon arriving at Smith's farmstead, officers searched the area and discovered boot tracks which led them to a nearby road where they found tire tracks in the snow, which they believed were made by the robbers. Photographs, drawings and measurements were taken of the boot tracks and tire tracks. Officers then interviewed residents of the Sawyer area and were told that Brian and Randall Page had been in the vicinity shortly before the robbery and were driving a 1973 blue Pontiac LeMans. Also, they learned that the brothers lived in northwest Minot.

The next day officers located the apartment of Randall and Brian Page and measured the tires of the Pontiac LeMans parked outside. Measurements of boot prints leading from the car to the apartment were also taken. The shape and size of the tire tracks and the boot prints found near the apartment were nearly identical to those found on the Smith farm.

The officers went to the door of the apartment and were admitted by Randall Page, who declined to answer the officers' questions. Both Pages agreed to accompany the officers to the Minot police station for further investigation. While Randall was dressing, in preparation of accompanying the officers to the station, one of the officers observed a billfold in his pocket containing a large amount of money. Both of the Pages were then placed under arrest. Two pair of boots were taken from the Page brothers shortly thereafter.

After the arrest, the officers procured a warrant to search the apartment and the Pontac LeMans. Several curling irons and other items belonging to Gilmore House of Beauty were found in the apartment. The police found another billfold containing a large sum of money under one of the bedroom mattresses. In their search of the defendants' car, the officers discovered, among other things, two pistols, a pair of white rubber gloves, and a red gas can matching the description given to them by Joe Smith.

## CHANGE OF VENUE

The Pages assert that the trial court abused its discretion in refusing to grant a change of venue. They allege that they could not obtain a fair and impartial trial in the Minot community because a pretrial newspaper account of the robbery was prejudicial. The defendants further claim that because they are native Americans, it was impossible to select an impartial jury panel from the Minot area. The defendants apparently did not renew their motion for change of venue after the voir dire examination.

Pursuant to Rule 21(a), NDRCrimP:

"The court upon motion of the defendant shall transfer the proceeding as to him to another county or municipality whether or not such county or municipality is specified in the defendant's motion if the court is satisfied that there exists in the county or municipality where the prosecution is pending so great a prejudice against the defendant that he cannot obtain a fair and impartial trial."

Whether or not venue should be changed for reason of prejudice rests within the sound discretion of the trial court. *State v. Jager*, 85 N.W.2d 240 (N.D.1957). Our court recently stated in *State v. Olson*, 274 N.W.2d 190, 193 (N.D.1978), that on appeal we will look at the totality of circumstances to determine whether the trial was fair. Determining venue is a part of those total circumstances. In *Olson* we stated:

"On a pretrial review of an order denying a motion for change of venue, a defendant may well be in a position to urge that doubts be resolved in his favor. After trial and conviction, where the reasonable likelihood of prejudice has been refuted by voir dire examination, we give deference to the trial judge who has heard the responses made by the jurors."

The trial court denied the request for change of venue because there was no proof that widespread prejudice in Minot would prevent a native American from receiving a fair trial. We cannot fully review this determination because of the failure to supply a complete record. No record of the voir dire examination is available nor is there any other record showing that a native American cannot receive a fair trial in Minot. The one front-page newspaper article printed shortly after the robbery is headlined: "Brothers Held." While this article describes the salient facts of the robbery, it does not describe the Page brothers as belonging to any particular racial group. The article merely states that the brothers were suspects and that a sum of money believed to have been taken in the robbery was recovered from their apartment.

In the memorandum opinion relating to venue, the trial court stated that pretrial publicity is not inherently prejudicial. We agree with this statement. Nothing in the article is prejudicial on its face, and the Pages have not provided us with any other reason to hold that it is prejudicial.

## UNREASONABLE SEARCH

The Page brothers assert that the trial court committed reversible error by admitting into evidence the boots and other items taken from the apartment in violation of their Fourth Amendment protection against unreasonable searches and seizures. They claim that their arrests were invalid because:

(1) The officers did not obtain an arrest warrant, and

(2) There was lack of probable cause to arrest without a warrant.

Under § 29-06-15, NDCC, a peace officer without a warrant may arrest a person when a felony has been committed and the police officer has reasonable cause to believe the person arrested has committed it. Our court has interpreted the terms "reasonable cause" and "probable cause" as being synonymous. *State v. Frye*, 245 N.W.2d 878 (N.D.1976); *State v. Salhus*, 220 N.W.2d 852 (N.D.1974).

In *State v. Kolb*, 239 N.W.2d 815, 816 (N.D.1976), our court defined probable cause as follows:

"Probable cause exists when the facts and circumstances within a police officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a man of reasonable caution in believing that an offense has been or is being committed."

Although the facts and circumstances upon which the officer relies need not amount to evidence sufficient to convict [*State v. Erdman*, 170 N.W.2d 872, 876 (N.D.1969)], the officer must have more than a bare suspicion that the defendant committed the offense. *Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). In determining what constitutes probable cause, we deal with probabilities:

" 'These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved.' " *State v. Chaussee*, 138 N.W.2d 788, 792 (N.D. 1965).

Here, there was probable cause to arrest prior to the time the officers were admitted to the defendants' apartment. The officers acted reasonably upon trustworthy reports that the defendants had been in the vicinity prior to the robbery. They knew that the Pontiac LeMans the Pages were driving had large rear tires approximately the size of the prints that were located on Joe Smith's farm. Measurements and description of the footprints found around the car were similar to those found near the scene of the robbery. The cumulative effect of this information provided more than a mere suspicion that Brian and Randall Page had committed the robbery.

It is asserted that even with the requisite proximate cause, the officers' entry into the apartment was unlawful because consent was not given to enter or, if consent was given, it was involuntary because of coercive tactics on the part of the officers. The Pages claim that their arrest and the search of their home violated their Fourth Amendment expectation of reasonable privacy, and the evidence acquired after the unlawful entry was inadmissible against them.

■ In the case of *United States v. Phillips*, 497 F.2d 1131, 1135 (9th Cir. 1974), the Ninth Circuit Court of Appeals said: "An officer without an arrest warrant certainly has no more license than an officer with a warrant in seeking entry to effect an arrest." Absent a judicial determination to the contrary, the Fourth Amendment protection that assures citizens the privacy of their homes "is applicable not only in case of entry to search for property, but also in cases of entry to arrest a suspect."

■ The Fourth Amendment right against an unreasonable entry to an individual's home for the purpose of arrest or search is a right which can be waived.

*State v. Manning*, 134 N.W.2d 91, 97 (N.D. 1965). Thus, if a person consents to an entry of his home by law officers, he cannot later claim that his rights have been violated by the entry.

■ The Fourth Amendment requires that consent be voluntary, unimpeded by either explicit or covert force. *Schneckloth v. Bustamonte*, 412 U.S. 218, 228, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). To determine what constitutes "voluntary consent," our court considers the totality of the circumstances. *State v. Metzner*, 244 N.W.2d 215, 221 (N.D.1976). The background, experience and conduct of the accused is relevant to this determination. *State v. Manning, supra.*

■ At trial, Deputy Sheriff Gardner of the Ward County Sheriff's Office was questioned about the circumstances under which the officers entered the apartment:

"Q All right. Now, when you went down and someone knocked on the door, what did you do?

"A I stood off to the side a little bit.

"Q Did you ever go into the apartment at that time?

"A Yes, sir, we did. *When the individual answered the door, opened it up, I believe it was Westphal asked if we could come in, he stated yes.* So we entered the room. I don't really recall all the conversations that took place right away, but then Agent Westphal and Deputy Gietzen took the Page brothers into custody."

[Emphasis added.]

The above testimony provides the only understandable description of what occurred at the time the officers sought entry into the apartment. The record discloses that Randall Page unequivocally invited the officers to enter his home. No clear evidence was presented to controvert this testimony. Under the circumstances, Officer Gardner's version of the entry is a credible interpretation of the events that occurred.

■ The fact that there were armed policemen outside the door or that Randall Page refused to answer questions is not

proof that the officers used coercive tactics. The record does not support the argument that the officers entered to make an arrest rather than to ask questions. There is nothing constitutionally objectionable about law officers inquiring at a citizen's home about the perpetration of a crime. Although officers are not invested with an unlimited license to glean what they can from questioning a suspect, the due process clause does not require that officers forego questioning entirely. *Schneckloth v. Bustamonte, supra,* 412 U.S. at 225, 93 S.Ct. 2041. Randall Page's consent to an entry by the officers is not inconsistent with a refusal to consent to informal interrogation.

The conduct of the officers was not unreasonable when they entered the Page apartment. They knocked prior to admittance and were invited in. They inquired about the Pages' activities the previous night. There is no evidence that they used coercive tactics to force cooperation. There is nothing in the record which suggests that the officers made any threats to gain entry. The officers remained in the living room while they waited for Brian and Randall to ready themselves for the trip to the police station.

From the record it appears that the Pages are intelligent and aware individuals, capable of refusing entry to the officers. Randall Page, nevertheless, chose to invite the officers in, even after he was informed that their purpose was to inquire about activities the previous evening. From the totality of the circumstances we conclude consent was voluntarily given to enter.

## THE DORMAN GUIDELINES

When the officers' intent is to make an arrest but there is no consent to enter, the question is whether the entry is lawful absent an arrest warrant. The United States Supreme Court has apparently not considered this question.[1]

The Circuit Court of Appeals for the District of Columbia, sitting en banc, held in *Dorman v. United States,* 140 U.S.App.D.C. 313, 435 F.2d 385 (1970), that an unconsented entry into a home by law officers for the purpose of making an arrest or search is per se unreasonable. See also *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). This conclusion flows from the premise that a great burden to show exigent circumstances is placed on officers who enter a home or dwelling without consent. "Freedom from intrusion into the home or dwelling is the archetype of the privacy protection secured by the Fourth Amendment." *People v. Ramey,* 16 Cal.3d 263, 273, 127 Cal.Rptr. 629, 635, 545 P.2d 1333, 1339 (1976).

The term "exigent circumstances" has been defined as an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence. *People v. Ramey, supra,* 127 Cal.Rptr. at 637, 545 P.2d at 1341.

In the context of a search situation, our court has said that the term "exigent circumstances" is not a separate exception to the requirement of a warrant, but is only a handy way of describing circumstances which give rise to one of the generally recognized exceptions to the warrant requirement.[2] *State v. Matthews,* 216 N.W.2d 90, 100 (N.D.1974). The existence

---

1. The United States Supreme Court noted probable jurisdiction on December 11, 1978, over the consolidated New York cases of *People v. Payton* and *People v. Riddick,* 45 N.Y.2d 300, 380 N.E.2d 224 (1978). See ── U.S. ──, 99 S.Ct. 718, 58 L.Ed.2d 703. The New York Court of Appeals held that an unconsented entry to arrest, based upon probable cause, was lawful even though there was an absence of exigent circumstances to enter.

2. The exceptions to the requirement of a search warrant are: (1) a search incident to a lawful arrest warrant, *State v. Gagnon,* 207 N.W.2d 260, 263 (N.D.1973); (2) a border search, *Almeida-Sanchez v. United States,* 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973); (3) a valid consent to search by an appropriate person, *State v. Howe,* 182 N.W.2d 658 (N.D.1971); (4) the evidence seized is in "plain view" of officers legally in a position to see it, *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

of exigent circumstances justifying a warrantless entry for arrest necessarily differ somewhat from those applicable to a search. *United States v. Shye*, 492 F.2d 886, 891 (6th Cir. 1974). The court of appeals in *Dorman, supra*, has enunciated six guidelines to aid law enforcement in ascertaining when exigent circumstances exist in a warrantless entry for an arrest.[3]

The guidelines are:

(1) A grievous offense is involved, particularly one that is a crime of violence;

(2) The suspect is reasonably believed to be armed;

(3) There exists a clear showing of probable cause;

(4) There is a strong reason to believe that the suspect is in the premises being entered;

(5) There is a likelihood that the suspect will escape if not swiftly apprehended; and

(6) The unconsented entry is peaceably made.

The *Dorman* court, without labeling it as a guideline, added the additional factor of whether it was a daytime or nighttime entry. The time of entry, while significant, is a double-edged consideration. On the one hand, inability to obtain a warrant at night may lessen the warrant requirement. On the other hand, a late night entry may require a higher standard of reasonableness.

The effectiveness of the above criteria for determining when a warrantless entry into a home is valid has recently been criticized by Wayne R. LaFave in his excellent dissertation entitled, *Search and Seizure—A Treatise on the Fourth Amendment*, Vol. 2 at 386 (1978), et seq. The thrust of LaFave's criticism is that the purpose of all Fourth Amendment standards is to keep police conduct within constitutional limits. This purpose is not served by "a rule which

cannot be applied correctly with a fair degree of consistency by well-intentioned police officers." *LaFave, supra*, at 390. It is thus appropriate to ask whether *Dorman* is too sophisticated to be applied, requiring as it does the making of on-the-spot decisions by a complicated weighing and balancing of a multitude of imprecise factors. *LaFave, supra*, at 390.

Although our court will utilize the approach of the *Dorman* court, we do so with the caveat that its guidelines are not to be interpreted as cardinal maxims, rigidly applied to every case. Rather, we seek to utilize the *Dorman* considerations as flexible guidelines to determine under what circumstances officers may lawfully enter an individual's home without a warrant. We do not consider the guidelines to be conditions precedent to a lawful entry. See *State v. Jones*, 274 N.W.2d 273, 276 (Iowa 1979). All other circumstances bearing upon the exigencies of the situation must be considered in deciding whether an entry of the suspects' home was lawful. The existence of exigent circumstances must be determined in light of the facts known to the officers at the time they seek entry. *People v. Ramey, supra*, 127 Cal.Rptr. at 637, 545 P.2d at 1341. The fundamental considerations in determining whether an entry for arrest is reasonable to satisfy the Fourth Amendment will remain: (1) is there probable cause to arrest, and (2) will the time and circumstances effectively prohibit the officers from obtaining a warrant.

Here, the officers had probable cause to enter the Page apartment. The circumstances surrounding the entry did not, in fairness, require delay. Swift action to prevent possible escape by the suspects and to preserve the fruits of the robbery may be essential to effective law enforcement. When the officers had obviously located the suspects' car and apartment, it

---

3. The *Dorman* approach has been adopted by a number of state and federal courts. See, for example, *United States v. Phillips*, 497 F.2d 1131, 1135 (9th Cir. 1974); *United States v. Shye*, 492 F.2d 886, 891 (6th Cir. 1974); *Government of Virgin Islands v. Gereau*, 502 F.2d 914 (3d Cir. 1974); *Salvador v. United*

*States*, 505 F.2d 1348 (8th Cir. 1974); *United States v. Reed*, 572 F.2d 412 (2d Cir. 1978); *Huotari v. Vanderport*, 380 F.Supp. 645 (D.Minn.1974); *Laasch v. State*, 84 Wis.2d 587, 267 N.W.2d 278 (1978); *Commonwealth v. Forde*, 367 Mass. 798, 329 N.E.2d 717 (1975).

would have been foolhardy not to make further inquiry of the apartment occupants. Because a Pontiac, identified as the one seen in the Sawyer area, was parked outside, it was reasonable to assume that the Page brothers might be in the apartment. In addition, it was not unreasonable to assume that the apartment occupants had seen the officers examining tire and boot tracks and would have escaped or destroyed any incriminating evidence while the officers were procuring a warrant. Although it may have been wise when viewed with hindsight, we do not fault the officers for failing to post a "stake out" while a warrant was being obtained. The actual entry in this case was peaceably made at a reasonable daylight hour, and the officers knocked and asked permission to enter. For these reasons we conclude that sufficient exigent circumstances existed for the officers to enter and arrest without a warrant.

## ADMISSIBILITY

Having determined that the arrest satisfies the Fourth Amendment, the remaining question is whether the evidence seized pursuant thereto was admissible at trial. We conclude that the evidence was admissible on either of two theories: (1) a search incident to a lawful arrest, or (2) evidence seized in plain view.

In *State v. Gagnon*, 207 N.W.2d 260, 264 (N.D.1973), note 1, our court reiterated the United States Supreme Court holding in *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), *rehearing denied*, 396 U.S. 869, 90 S.Ct. 36, 24 L.Ed.2d 124 (1969), to the effect that:

> "[A] search without warrant incidental to a valid arrest must be confined to the person and the area within which the defendant might reach weapons or destroy the evidence."

 It is not contended here that the officers did not limit their search to the immediate area where the Pages were arrested. One pair of boots was seized from this area. Another pair was taken from Randall Page while he was wearing them.

The wallet observed by one of the officers was seized from Randall Page while he was in custody at the police station. The brief delay in the seizure of the wallet does not change the status of a lawful search into something else. It is generally accepted that where a valid seizure could be made at the place of arrest, there is no justification for invalidating the subsequent seizure of the evidence at the station house. *United States v. Edwards*, 415 U.S. 800, 803, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974).

 The second theory on which the search and seizure can be sustained is that the evidence was in "plain view" of the officers. "What the 'plain view' cases have in common is that the police officer in each of them had a *prior justification* for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused. The doctrine serves to supplement the prior justification—whether it be a warrant for another object, hot pursuit, search incident to lawful arrest, or some other legitimate reason for being present unconnected with a search directed against the accused—and permits the warrantless seizure." *Coolidge v. New Hampshire*, 403 U.S. 443, 466, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971), *rehearing denied*, 404 U.S. 874, 92 S.Ct. 26, 30 L.Ed.2d 120 (1971). [Emphasis added.]

At no time did the officers conduct a general, exploratory search during the arrest of the defendants. Rather, the boots were located in an open area, plainly in sight of the arresting officers. As is discussed above, the officers had a justification for being in the apartment. The officers had grounds to believe that the boots were those worn at the scene of the crime.

Because each of the exceptions to the search warrant requirement have been met, the evidence was properly admitted. All other evidence seized from the apartment and car was taken pursuant to a valid search warrant.

All of the items seized as an incident to a lawful arrest or as the product of a search conducted pursuant to a search warrant

were properly admitted. No error has been shown. The judgments are affirmed.

ERICKSTAD, C. J., and PAULSON, SAND and VANDE WALLE, JJ., concur.