STATE of North Dakota, Plaintiff
and Appellant,

v.

Monte NAGEL, Defendant and Appellee.

In the Interest of G. C., a child.

Crim. No. 761, Civ. No. 9908.

Supreme Court of North Dakota.

June 25, 1981.

Bruce D. Quick, Asst. State's Atty., Fargo, for plaintiff and appellant; argued by Bruce D. Quick, Fargo.

George E. Duis, Fargo, for defendant and appellee; argued by George E. Duis, Fargo.

ERICKSTAD, Chief Justice.

The appellant, State of North Dakota, appeals from orders of the District Court of Cass County granting each of the defendants' motions to suppress evidence.

The defendants, Monte Nagel, and a juvenile, Gary (a pseudonym), were arrested on November 21, 1979. Prior to their arrest drug enforcement agents had received two deliveries of methamphetamines from Jay Braaten. Agent Kim Murphy arranged for a third delivery on November 21, 1979. Braaten's movements were monitored by a surveillance team prior to the time he was supposed to meet Murphy. Braaten went to the residence of Monte and Gary at 303 North 11th Street in Fargo and remained there for two hours before going to meet Murphy. Braaten called Murphy from the residence before going to meet Murphy. Sometime between 3:30 and 4:00 p. m. Braaten met Murphy a short distance from the residence, and delivered to Murphy one-half pound of methamphetamines in exchange for $10,200. Murphy then arrested Braaten who told Murphy that Gary and Monte expected him back in 20 minutes and if he did not return within that time they would know something had gone wrong. Braaten also related that a large quantity of methamphetamines was located in an upstairs bedroom of the residence and, pursuant to an inquiry by Murphy, said he did not know if Monte and Gary were carrying weapons. Based upon this information Murphy began immediately to attempt to obtain a search warrant.

Meanwhile, back at the residence, the surveillance team was in radio contact with Murphy who told them that Monte and Gary expected Braaten back within 20 minutes and that Murphy was in the process of obtaining a search warrant. Between 4:00 and 4:15 p. m. the surveillance team decided that there was probable cause to believe Monte and Gary had committed felonies and would destroy evidence before Murphy could return with a search warrant if Braaten did not return within the 20 minutes. Accordingly, two members of the team approached the door and knocked. An officer who approached stated in an affidavit that a male individual came to the front door and when the officers announced who they were and asked to come into the house the individual ran from the door and the officers then broke down the door. Gary and Monte testified that they were sitting on the couch in the living room when the officers broke down the door without knocking and arrested them. The officers testified that only a cursory search was made to see if there were any other persons present. The defendants said the officers searched through the house although Monte testified at the hearing on the motion to suppress that he could not see whether or not they searched other rooms. The defendants also said that the officers found a bag of marijuana behind a speaker in the living room where Monte and Gary were handcuffed and seated on the couch. It is undisputed that there was a small amount of marijuana in plain view on a magazine stand in the living room.

Murphy, while in the process of securing a search warrant, was informed through a phone call that the house had been entered. Except for the actual street address of the house he was given no other information. Murphy previously knew the location of the house. The search warrant was signed by the judge at 5:45 p. m. and served by Murphy at 6:30 p. m. Pursuant to his independent search under the search warrant Murphy discovered a bag of marijuana in the living room, other small quantities of mari-

juana and a large amount of methamphetamines in Gary's bedroom. The defendants testified that the bag of marijuana was found by the officers prior to the service of the search warrant.

On November 21, 1979, Gary was charged with the delinquent acts of (1) possession with intent to deliver methamphetamines, in violation of Sections 19–03.1–07 and 19–03.1–23, N.D.C.C., and (2) possession of more than one ounce of marijuana in violation of Sections 19–03.1–05 and 19–03.1–23, N.D.C.C. On January 15, 1980, Gary made a motion to suppress. This motion was denied by the Honorable Norman J. Backes, District Judge, on March 19, 1980.

Monte was charged in an amended information with possession of marijuana February 27, 1980. His motion to suppress the evidence was granted by the Honorable John O. Garaas, district judge, on October 14, 1980. Subsequently, Gary made a motion for continuance and renewal of his motion to suppress evidence. Judge Backes then granted both relying on the memorandum opinion and order of Judge Garaas granting Monte's motion to suppress. Judge Garaas held that the evidence should be suppressed as being obtained incident to an illegal arrest pursuant to *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).

The state asserts the following issues on appeal:

"I. Does the United States Supreme Court Opinion in *Payton and Riddick v. New York* that prohibited law enforcement agents from making a warrantless entry into a suspect's home to make a routine felony arrest apply retroactively?

"II. Assuming retroactive application of *Payton* and *Riddick*, was the seizure of the controlled substances involved in this case pursuant to a valid search warrant

the 'derivative fruit' of an unlawful entry and arrest?

"III. Did 'exigent circumstances' exist to justify the warrantless entry and arrest?"

### I. Entry to Arrest

In its memorandum, the trial court relied upon the holding of *Payton v. New York, supra*, to determine that the evidence should be suppressed as a product of an illegal entry of a home to arrest without a warrant of arrest and that, pursuant to the guidelines in *State v. Page*, 277 N.W.2d 112 (N.D.1979), there were no exigent circumstances to allow such an entry. The state contends that the imminent destruction of evidence should be classified as an exigent circumstance allowing a warrantless entry to arrest.

### A. Entry to Arrest

■ In *Payton, supra*, the United States Supreme Court held that a warrantless, nonconsensual entry into a suspect's home in the absence of exigent circumstances to make a routine felony arrest violated the Fourth Amendment. Section 29–06–14, N.D.C.C., permitting such entries to arrest, is therefore unconstitutional.[1] We recognized that there was a possibility that action pursuant to Section 29–06–14 might be held violative of the Fourth Amendment when we decided *State v. Page*, 277 N.W.2d 112, 117 (N.D.1979). In *Payton* the Supreme Court indicated that the case before them did not present the question of what "sort of emergency or dangerous situation, described in our cases as 'exigent circumstances,' . . . would justify a warrantless entry into a home for the purpose of either arrest or search." 445 U.S. at 583, 100 S.Ct. at 1378, 63 L.Ed.2d at 649. A plain reading of *Payton* reveals that the holding does not

---

1. "*29–06–14. Officer may break door.*—An officer may break open any door or window of a dwelling house to execute a warrant of arrest, or to make such arrest for a felony without a warrant, as is provided in section 29–06–15, if, after notice of his authority and purpose, he is refused admittance." § 29–06–14, N.D.C.C.

"*29–06–15. Arrest without warrant.*—A peace officer, without a warrant, may arrest a person:

\* \* \* \* \* \*

"2. When the person arrested has committed a felony, although not in his presence." § 29–06–15(2), N.D.C.C.

apply when officers have probable cause to believe a felony has been committed and exigent circumstances exist which justifies a warrantless entry to arrest. *See Steagald v. United States,* —— U.S. ——, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981). Therefore, we must decide whether or not the circumstances present in this case indicate that the officers had probable cause to believe a felony had been committed, and whether or not the facts show that there were exigent circumstances justifying the officers' entry into the residence.

For the purposes of determining whether or not there were exigent circumstances we will assume that *Payton,* which was decided April 15, 1980, should be applied retroactively and governs the November 21, 1979, search. (Retroactivity will be later discussed.).

In its memorandum the district court applied the so called *Dorman* guidelines.[2] In *State v. Page, supra,* we said:

"Although our court will utilize the approach of the *Dorman* court, we do so with the caveat that its guidelines are not to be interpreted as cardinal maxims, rigidly applied to every case. Rather, we seek to utilize the *Dorman* considerations as flexible guidelines to determine under what circumstances officers may lawfully enter an individual's home without a warrant. We do not consider the guidelines to be conditions precedent to a lawful entry. See *State v. Jones,* 274 N.W.2d 273, 276 (Iowa 1979). All other circumstances bearing upon the exigencies of the situation must be considered in deciding whether an entry of the suspects' home was lawful. The existence of exigent circumstances must be determined in light of the facts known to the officers at the time they seek entry. *People v.*

*Ramey, supra,* [16 Cal.3d 263], 127 Cal. Rptr. [629] at 637, 545 P.2d [1333] at 1341. The fundamental considerations in determining whether an entry for arrest is reasonable to satisfy the Fourth Amendment will remain: (1) is there probable cause to arrest, and (2) will the time and circumstances effectively prohibit the officers from obtaining a warrant." 277 N.W.2d at 118.

The district court, however, rigidly applied the *Dorman* guidelines saying: "This Court finds that three of the necessary six guidelines are absent. . . . Exigent circumstances did not exist and absent such exigent circumstances, the arrest and subsequent detention of the Defendant is constitutionally unlawful."

The district court erred when it determined that exigent circumstances did not exist at the time the officers entered the residence of Monte and Gary and secured the premises. The error was in treating the *Dorman* guidelines as prerequisites to a lawful arrest which must be met before there can be exigent circumstances. In other words, by requiring the existence of all of the *Dorman* elements to find exigent circumstances the court erred.

We agree with the district court's determination that there was probable cause to believe a felony had been committed. In respect to the issue of probable cause the trial court said:

"There appears to this Court no contested issue that the officers at the time of the arrest had such statutory authority to break down the door to make the arrest in that possession of controlled substance under the facts in this case is a felony. Also from the facts in this case the police officers had knowledge that a

2. In *Dorman v. United States,* 140 U.S.App. D.C. 313, 435 F.2d 385 (1970), the Circuit Court of Appeals for the District of Columbia set out guidelines for ascertaining when exigent circumstances exist in a warrantless entry for an arrest. These guidelines are:

"(1) A grievous offense is involved, particularly one that is a crime of violence;

"(2) The suspect is reasonably believed to be armed;

"(3) There exists a clear showing of probable cause;

"(4) There is a strong reason to believe that the suspect is in the premises being entered;

"(5) There is a likelihood that the suspect will escape if not swiftly apprehended; and

"(6) The unconsented entry is peaceably made." 277 N.W.2d at 118.

felony in fact had been committed and that the arresting officer had reasonable cause to believe the person arrested had committed such crime."

The state contends that, in addition to probable cause to believe that a felony had been committed, there were exigent circumstances as Braaten told agent Murphy that Monte and Gary expected him back within twenty minutes and if he were not they would know something had gone wrong. While he did not say what they would then do, we think it was reasonable for the officers to interpret Braaten's statement to mean if he did not return promptly Monte and Gary would destroy evidence of the possession of other drugs.

Is the imminent destruction of evidence of a crime a sufficient exigent circumstance to make a nonconsensual, warrantless entry into a suspect's home to arrest him when there is probable cause to believe that a felony has been committed by that person? In this case we are not addressing the issue of whether or not the police may *enter and search* without a warrant when they have probable cause to believe a felony has been committed and exigent circumstances exist, but whether or not they may enter and arrest under those circumstances. Thus, exigent circumstances in the context of a search situation as discussed in *State v. Matthews*, 216 N.W.2d 90, 100 (N.D.1974), is not applicable as "the existence of exigent circumstances justifying a warrantless entry for arrest necessarily differ somewhat from those applicable to a search." *State v. Page, supra*, 277 N.W.2d at 118.

The definition of exigent circumstances in the context of entry to arrest found in *State v. Page, supra*, 277 N.W.2d at 117 is particularly applicable. We said:

"The term 'exigent circumstances' has been defined as an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence." *Id.*

We agree with the following statement of the First Circuit Court of Appeals in *United States v. Edwards*, 602 F.2d 458 (1st Cir. 1979); "More specifically, the possibility that evidence will be destroyed by defendants who have discovered government surveillance of their activities often has been recognized as a sufficient exigency to justify warrantless entry." (Citations omitted.) 602 F.2d at 468.

In *Edwards*, a package containing heroin was discovered by a shipping clerk. The package was delivered to a home under surveillance. The defendant, Edwards, who had picked up the package gestured toward an FBI agent at the house and then entered the house with a co-defendant. Shortly thereafter the agents entered and conducted a search to see if any other persons were present and then secured the premises while they waited for a search warrant. In affirming the defendants' convictions the circuit court said:

"These facts support our conclusion that the government agents legitimately could fear that Richards and Edwards had discovered their surveillance and would destroy the package before a search [warrant] could be obtained. Therefore, their entry into Edwards' home was justified in order to prevent the destruction of that evidence, and no illegality existed to taint the search warrant subsequently obtained." 602 F.2d at 469. (Footnotes omitted.)

Under similar facts other courts have also held that the imminent destruction of evidence is a sufficient exigent circumstance to justify a warrantless entry of a home. *United States v. Korman*, 614 F.2d 541 (6th Cir. 1980); cert. den. 446 U.S. 952, 100 S.Ct. 2918, 64 L.Ed.2d 808 (affirmed trial court's denial of motion to suppress on facts determined not to be clearly erroneous; for an opposing view see the dissent in 614 F.2d at 547). *Ferdin v. Superior Court, In and For City of Alameda*, 36 Cal.App.3d 774, 112 Cal.Rptr. 66 (1974) (entry was based upon belief evidence would be destroyed when "runner" was arrested and would not be able to complete his mission; the police then secured the premises and awaited a warrant); *People v. Clements*, 37 N.Y.2d

675, 376 N.Y.S.2d 480, 339 N.E.2d 170 (Ct. App.1975); cert. den. 425 U.S. 911, 96 S.Ct. 1507, 47 L.Ed.2d 762, (search of bedroom drawers allowed under exigent circumstances),[3] *State v. Miller,* 19 Or.App. 604, 528 P.2d 1082 (1974) (informant was arrested and he related he was expected back shortly; the court reversed a suppression order and held that there were exigent circumstances justifying a warrantless entry and securing of the premises while awaiting a search warrant); *United States v. Rubin,* 474 F.2d 262 (3rd Cir. 1973); cert. den. 414 U.S. 833, 94 S.Ct. 173, 38 L.Ed.2d 68, ("Runner" arrested after delivering a crate of narcotics; at time of his arrest he yelled to spectators to call his brother; agents fearing destruction of the narcotics made a warrantless entry.).[4]

■ Under the circumstances present in this case the officers had probable cause to believe a felony had been committed, that controlled substances were located on the premises, and that the suspects in the home would be aware that something was wrong if Braaten did not return within a certain time and, therefore, it was proper for them to knock, announce who they were, and then on being denied entrance forcibly enter, arrest the suspects, and secure the premises while they waited for a search warrant which was in the process of being obtained. The great probability of imminent destruction or removal of evidence constituted exigent circumstances which permitted the officers to act when they had probable cause to believe a felony had been committed and there was not sufficient time to obtain a warrant. We emphasize the necessity of the combination of probable cause and exigent circumstances. *Payton v. New York, supra,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639. When destruction of evidence is the exigent circumstance, there must be more than a mere

belief that such destruction is probable, coupled with the fact that the suspects know or will soon become aware that the police are on their trail (*See United States v. Rubin, supra,* 474 F.2d at 268.), and that the entry is the least intrusive which, under the circumstances, is possible.

### B. Retroactivity of Payton v. New York

■ Notwithstanding what we have thus far concluded it is our view that *Payton v. New York,* which held a statute similar to Section 29–06–14, N.D.C.C., unconstitutional, is not to be applied retroactively. In *Brown v. Louisiana,* 447 U.S. 323, 100 S.Ct. 2214, 65 L.Ed.2d 159 (1980), the United States Supreme Court said:

> "Accordingly, the test consistently employed by the Court to decide whether a new constitutional doctrine should be applied retroactively contemplates the consideration of three criteria: '(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards.' *Stovall v. Denno,* 388 U.S. 293, 297, 87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199 (1967)." 447 U.S. at 327, 328, 100 S.Ct. at 2219, 65 L.Ed.2d at 165.

The purpose of the rule is the foremost of these factors. *Id.* In *Payton v. New York,* the Court required the suppression of evidence found during an unconsented entry to execute a warrantless routine felony arrest. The Court thereby intended to prevent arbitrary government intrusion into our lives in our most private place, our homes, in the absence of exigent circumstances and without a disinterested magistrate passing upon the question of probable cause to arrest. *Payton v. New York, supra.*

---

**3.** The facts of the case at bar do not present the question of a warrantless search; thus, we cite to *People v. Clements* only for the effect of exigent circumstances for a warrantless entry when there is probable cause to believe a felony has been committed and not for the propriety of a search.

**4.** For a discussion of destruction of evidence as an exigent circumstance for a warrantless search and the impoundment alternative, *see* Lafave, *Search and Seizure,* a treatise on the Fourth Amendment, § 6.5(b, c), Vol. 2, at 437 et seq.

In the case at bar such an intent will not be furthered by a retroactive application of the rule. The officers cannot go back and undo the forceful entry or the intrusion on Monte's and Gary's privacy. *Desist v. United States*, 394 U.S. 244, 249, 89 S.Ct. 1030, 1034, 22 L.Ed.2d 248 (1969). Such a purpose does not overcome "an aspect of the criminal trial that substantially impairs its truth-finding function and so raises serious questions about the accuracy of guilty verdicts in past trials," rather such a purpose, through the application of the suppression doctrine itself inhibits the truth-finding function of the court. *Brown v. Louisiana, supra*, 447 U.S. at 328, 100 S.Ct. at 2219, 65 L.Ed.2d at 165; *Linkletter v. Walker*, 381 U.S. 618 at 636–637, 85 S.Ct. 1731 at 1741–1742, 14 L.Ed.2d 601 (1965).

Secondly, the officers in the case at bar placed a great deal of reliance upon the old standards allowing a warrantless entry into a home to arrest for a felony. North Dakota and 23 other states permitted such entries, 15 prohibited them and 11 states had taken no position. *Payton v. New York*, 445 U.S. at 598, 599, 100 S.Ct. at 1386, 63 L.Ed.2d at 658. The United States Supreme Court recognized that allowing warrantless felony arrests in the home was "[a] longstanding, wide-spread practice". 445 U.S. at 600, 100 S.Ct. at 1387, 63 L.Ed.2d at 659. Thus, at the time of entry the officers were proceeding under statutory authority and were not required to question the constitutionality of that statute unless such law was so "grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws." *Michigan v. DeFillippo*, 443 U.S. 31, 99 S.Ct. 2627, 2632, 61 L.Ed.2d 343 (1979).

Finally, in the case at bar the effect of retroactive application on the administration of justice would be extremely burdensome. In refusing to apply *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), retrospectively, the United States Supreme Court said:

"To make the rule of *Mapp* retrospective would tax the administration of justice to the utmost. Hearings would have to be held on the excludability of evidence long since destroyed, misplaced or deteriorated. If it is excluded, the witnesses available at the time of the original trial will not be available or if located their memory will be dimmed. To thus legitimate such an extraordinary procedural weapon that has no bearing on guilt would seriously disrupt the administration of justice." *Linkletter v. Walker*, 381 U.S. at 637, 638, 85 S.Ct. at 1742, 14 L.Ed.2d at 613.

The United States Supreme Court in decisions expanding Fourth Amendment rights through use of the exclusionary rule has not applied the rules retrospectively. *Linkletter v. Walker, supra; Desist v. United States, supra; Williams v. United States*, 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971).

*The fact that the defendants have not been convicted is inconsequential, the time of application of a new doctrine is on the day after it is decided. Williams v. United States supra*, 401 U.S. at 654–60, 91 S.Ct. at 1153–56.

■ In this case, Monte and Gary were searched in November, 1979. *Payton v. New York* was decided on April 15, 1980. Therefore, as we have determined that *Payton* should not be applied retrospectively, and the search complained of took place before the decision in *Payton*, the entry and arrest pursuant to Section 29–06–14 was not illegal at the time it took place and thus the search warrant was not tainted by any unconstitutional conduct.

## II. Inevitable Discovery

■ In this case, even if *Payton* were to be applied retrospectively and it were determined that no exigent circumstances existed, the marijuana and methamphetamines were independently discovered pursuant to a valid search warrant.

In *Cruse v. State*, 584 P.2d 1141 (Alaska 1978), the Supreme Court of Alaska affirmed defendant's conviction when the facts revealed that one state trooper looked in the trunk of a car which was being

impounded subsequent to arrest of the occupants. The trunk was closed and a search warrant was sought by another police officer. The judge who signed the warrant was not told that an officer had already looked into the trunk. No information concerning anything seen by the officer was revealed to the judge. The warrant was then issued. The court held that there was sufficient independent probable cause to issue the warrant and that the warrant was not tainted by the first look into the trunk. Hence, the evidence was admissible as gained from an untainted independent source, the search warrant. 584 P.2d at 1145.

In this case, the warrant was in the process of being obtained and *no information* concerning anything the agents found when they entered Monte. and Gary's home was relayed to agent Murphy who was making an affidavit. Murphy received the street address of the house from the officers over the phone. He knew the location of the home. Also, the officers could have relayed the street address from outside during the period of surveillance over their radio. Therefore, all relevant information necessary for the warrant was independently in the hands of Murphy prior to the entry by the other agents. Inevitable discovery requires that there be a probability that the evidence in question would have been discovered. *People v. Payton*, 45 N.Y.2d 300, 408 N.Y.S.2d 395, 380 N.E.2d 224, 231 (1978); rev'd, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) (Reversed on grounds of illegal entry.). In *United States v. Griffin*, 502 F.2d 959 (6th Cir), cert. den. 419 U.S. 1050, 95 S.Ct. 626, 42 L.Ed.2d 645 (1974), the Circuit Court of Appeals suppressed evidence which was in plain view after the officers illegally entered the defendants' apartment even though they had sent an officer for a warrant prior to the entry. The court held that there were no exigent circumstances justifying entry as it appeared to the officers no one was in the apartment when they entered and there were no other factors which would justify a warrantless entry to search. The court denied the government's inevitable discovery argument by saying, "[a]ny other view would tend in actual practice to emasculate the search warrant requirement of the Fourth Amendment." 502 F.2d at 961.

While we agree that careless application of the inevitable discovery doctrine will encourage unconstitutional shortcuts,[5] the case at bar involves circumstances under which the inevitable discovery doctrine should be applied.

The officers were acting under a state statute when they entered, the warrant was in the actual process of being obtained, there were people present in the house, and the action that the officers undertook had not then been determined to be unconstitutional.

The district court determined that the warrant was tainted as the defendants would have had the opportunity to leave or dispose of the drugs before the warrant was obtained. The court said:

"The illegality of the arrest and detention of the Defendant physically prevented his leaving and that was the main purpose for the police to make such an illegal arrest, although such illegality was unknown to the police officers at that time. The Defendant has been jeopardized to a degree by such unlawful act, in that the Defendant would have had the opportunity to a planned evacuation of the premises.... Theoretically, the search warrant would not have been of any benefit after approximately two hours from the original arrest in that the Defendant may not have been present in the house so as to be in possession of the drugs and theoretically, the drugs could have been disposed of. The State cannot gain from its own wrongful acts at the expense of the Defendant's constitutional rights. Though theoretical in nature and abstract in nature, the violation of his rights have tainted the subsequent search warrant with illegality."

5. *See* Lafave, footnote 3, § 11.4(a), Vol. 2, at 623–24.

Aside from the fact that such actions would have created exigent circumstances justifying the entry to make a warrantless arrest, Monte testified as follows:

"Q. And you weren't about to run away somewhere, were you?

"A. No.

"Q. You didn't have anything packed or anything ready to go?

"A. No.

"Q. You were two kids sharing this house?

"A. Yes.

"Q. How were you dressed at the time they came in?

"A. We were dressed in the clothes that I normally wear, about like this.

"Q. No coats on or anything?

"A. No.

"Q. It was cold outside, was it?

"A. Yah, it was.

"Q. You weren't about to escape somewhere?

"A. No.

"Q. And you'd veen [been] living there peaceably for over a month?

"A. Yah.

Mr. DUIS: No other questions."

If this testimony is believed, it indicates that the defendants did not plan to escape with the drugs; hence, the illegal drugs would have remained where they were and would have been discovered in a search pursuant to the valid search warrant.

Therefore, if *Payton* were to be applied retrospectively and exigent circumstances were not in existence, the evidence still would have been admissible as it would have inevitably been discovered.

### III. Probable Cause for the Search Warrant

Counsel for Monte and Gary asserts that there was insufficient probable cause to issue the search warrant and hence the search was illegal and the evidence should be suppressed.

In *State v. Berger*, 285 N.W.2d 533 (N.D.1979), we discussed probable cause necessary for a search warrant. We said:

"Whether or not probable cause exists depends on the facts and circumstances of each case, but probable cause to search does not require a prima facie showing of criminal activity. Rather, it relates to the factual and practical considerations of everyday life on which reasonable and prudent men act." 285 N.W.2d at 536.

Hearsay will support a finding of probable cause, but the informer must be found credible and information must be revealed which shows that the basis of his information is reliable. *Aguilar v. Texas*, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967); *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *McCray v. State of Illinois*, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967); *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

In this case the informant did not know that he was selling drugs to an agent. He had done so twice before. Surveillance confirmed his statements that he had been at Monte and Gary's shortly before his arrest. He had one-half pound of methamphetamines and said he had seen more in an upstairs bedroom. There was sufficient information to find that the informant was reliable, as his statements saying where he had been were confirmed by the surveillance team and he had twice previously sold drugs to agent Murphy as he had agreed to do. There was probable cause to support the search warrant.

As the entry and arrest were not invalid, the district court should not have granted the defendant's motions to suppress. Therefore, the orders of the court are reversed.

VANDE WALLE, PEDERSON, PAULSON and SAND, JJ., concur.