**STATE of North Dakota, Plaintiff and Appellee,**

v.

**David Walter WAHL, Defendant and Appellant.**

**Crim. No. 890046.**

Supreme Court of North Dakota.

Jan. 18, 1990.

711

Lanier, Knox and Olson, Fargo, for defendant and appellant; argued by Kenneth A. Olson.

Melody R.J. Jensen (argued), Asst. State's Atty., Fargo, for plaintiff and appellee.

VANDE WALLE, Justice.

David Walter Wahl appealed from an order of the district court which denied his pretrial motion to suppress evidence seized during an undercover narcotics investigation. Wahl claims that the evidence was unlawfully seized and that the trial court erred in denying his motion to suppress. We affirm.

Fargo law enforcement officers and Agent Paul Bazzano of the North Dakota Drug Enforcement Unit were given information by a confidential informant that David Wahl was selling controlled substances, and that the informant would be able to purchase some cocaine from Wahl. The informant indicated that he had been at Wahl's apartment on the afternoon of April 28, 1987, and that he saw a quantity of cocaine and marijuana in a safe in Wahl's bedroom. Thereafter, Agent Bazzano, who had known of Wahl's alleged drug trafficking activities for approximate-

ly three weeks, worked with the informant in planning a controlled buy of cocaine from Wahl. The informant arranged to purchase one-quarter of an ounce of cocaine from Wahl for a price of $575.00. The deal was set to be conducted on April 28, 1987, at 8:30 p.m., in Wahl's apartment. The informant was to make the cocaine purchase with "marked" buy money provided by Agent Bazzano. The informant also agreed to wear a body transmitting device so that the agents could hear the conversation between Wahl and the informant.

On April 28, 1987, at approximately 9:00 p.m., the informant entered Wahl's apartment. After some initial conversation, the informant bought cocaine from Wahl. The informant actually purchased an "eight-ball" (one-eighth of an ounce) of cocaine from Wahl for a price of $300.00. When the delivery was completed, the informant started to leave the apartment. At that point in time, the officers who had been listening to the conversation through the informant's transmitter heard Wahl state that he was also going to leave. Agent Bazzano ordered the officers to arrest Wahl inside the apartment while he went to obtain a search warrant to search the premises. Agent Bazzano had not sought an "anticipatory search warrant" prior to the controlled buy.[1] After the informant exited Wahl's apartment, the officers entered into the residence and placed Wahl under arrest. At the time of the arrest, the officers did not search the apartment for controlled substances. Instead, they patted down Wahl, checked the apartment for other individuals, and waited for a search warrant to arrive in order to make a full search of the residence. During their patdown of Wahl, the officers found "a small amount of cocaine and marijuana." Furthermore, when the officers were conducting their cursory check of the apartment for other individuals, they observed a "bong" (a device used to inhale narcotics) on the kitchen counter. At the time the officers entered Wahl's apartment to make the arrest, they were not in possession of an arrest warrant.

---

**1.** An "anticipatory search warrant" is a warrant that has been issued by a magistrate before the necessary events have occurred which would allow a constitutional search of the premises. If those events do not transpire, the warrant is void. However, if the events do transpire, the occurrence of the events would create probable cause and allow a search of the premises identified in the warrant. It has been held that anticipatory search warrants are not unconstitutional. *See United States v. Garcia,* 882 F.2d 699 (2nd Cir.1989).

One of the arguments in *Garcia* was that anticipatory search warrants are unconstitutional because they violate the Fourth Amendment's requirement that all warrants be based on probable cause. The United States Court of Appeals for the Second Circuit disagreed. It stated:

"When a government official presents independent evidence indicating that delivery of contraband will, or is likely to, occur, and when the magistrate conditions the warrant on that delivery, there is sufficient probable cause to uphold the warrant. *United States rel. Beal v. Skaff,* 418 F.2d 430, 433–34 (7th Cir.1969). Thus, the fact that the contraband is not 'presently located at the place described in the warrant' is immaterial, so long as 'there is probable cause to believe that it will be there when the search warrant is executed.' *United States v. Lowe,* 575 F.2d 1193, 1194 (6th Cir.), *cert. denied,* 439 U.S. 869, 99 S.Ct. 198, 58 L.Ed.2d 180 (1978); *see United States v. Dornhofer,* 859 F.2d 1195, 1198 (4th Cir. 1988), *cert. denied,* —— U.S. ——, 109 S.Ct.

1639, 104 L.Ed.2d 155 (1989)." *Garcia,* 882 F.2d at 702.

The Court concluded anticipatory warrants are not unconstitutional per se and that, in the proper circumstances, they could be an effective tool both to fight criminal activity and to protect individual Fourth Amendment rights.

However, the Court of Appeals in *Garcia* also cautioned law enforcement officers that they may not use anticipatory warrants without limitation. It noted:

"We recognize that any warrant conditioned on what may occur in the future presents some potential for abuse. Magistrates and judges should therefore take care to require independent evidence giving rise to probable cause that the contraband will be located at the premises at the time of the search. This means that affidavits supporting the application for an anticipatory warrant must show, not only that the agent believes a delivery of contraband is going to occur, but also *how* he has obtained this belief, how reliable his sources are, and what part government agents will play in the delivery. Judicial officers must then scrutinize whether there is probable cause to believe that the delivery will occur, and whether there is probable cause to believe that the contraband will be located on the premises when the search takes place." (Emphasis in original.) *Garcia,* 882 F.2d at 703.

A search warrant was issued to Agent Bazzano by a magistrate at approximately 11:30 p.m. that evening. The application for the search warrant was supported by the affidavit of Agent Bazzano. The affidavit detailed the officers' investigation of Wahl's alleged drug trafficking, the information supplied by the confidential informant relating to Wahl's alleged drug activities, the details surrounding the controlled buy from Wahl, the information that the officers received during the buy from the informant's body transmitter, and the fact that the informant had left Wahl's apartment in possession of a small amount of packaged cocaine and without the marked buy money. Pursuant to the warrant, Wahl's apartment was subsequently searched by Agent Bazzano and a variety of incriminating evidence, including substantial amounts of cocaine and marijuana, was seized by the authorities.

Wahl was charged with four Class A felonies including the manufacture of a controlled substance, the delivery of a controlled substance, the possession of a controlled substance with the intent to deliver, and the possession of a controlled substance. *See* NDCC §§ 19–03.1–05, 19–03.1–07, and 19–03.1–23. Wahl filed a pretrial motion to suppress all of the evidence seized by the law enforcement officers. Wahl contended that warrantless entry into his home was unlawful, and that the warrantless entry into his home by means of a concealed, electronic-transmitting device was also unlawful.

The district court rejected Wahl's motion. It recognized that a warrantless entry into a residence to make an arrest is lawful only when (1) the officers have probable cause to believe that a felony has been committed and (2) exigent circumstances exist which justify the warrantless entry. Here, the district court found that the officers had probable cause to make an arrest. It noted that the controlled buy gave the officers knowledge that a felony had been committed, and further gave the officers reasonable cause to believe that Wahl had com-mitted the crime. However, the district court also found that no exigent circumstances existed to allow the officers to enter the premises and make an arrest without a warrant. The court noted that Wahl was not aware of the police surveillance, and that the entry was not an emergency situation requiring swift action to prevent imminent danger to life, serious damage to property, or the destruction of evidence. The district court thus determined that Wahl's arrest was unlawful.

However, despite its conclusion that Wahl's arrest was unlawful, the district court concluded that the evidence seized by the Fargo police should not be suppressed due to the doctrine of inevitable discovery. The district court found that the officers had sufficient probable cause to obtain a search warrant prior to the unlawful entry and arrest, and that all of the evidence seized by the authorities would have been inevitably discovered pursuant to the valid warrant. In addressing Wahl's second issue pertaining to the electronic-transmitting device, the district court held that when an informant agrees to conceal a transmitter on his or her body and transmits conversations with a defendant in the defendant's home, there is no violation of the defendant's Fourth Amendment right against unreasonable searches and seizures. Thus, the district court concluded that all of the evidence seized by the police, including the evidence seen during the initial unlawful arrest of Wahl, and the evidence subsequently discovered pursuant to the search warrant, would be admissible.

After the district court denied Wahl's motion to suppress, Wahl entered a conditional plea of guilty pursuant to Rule 11(a)(2) of the North Dakota Rules of Criminal Procedure. Wahl subsequently filed a timely notice of appeal. On appeal, Wahl argues that the district court erred in applying the doctrine of inevitable discovery to deny his motion to suppress, and contends that all the evidence seized should have been suppressed due to the unlawful entry and arrest.[2]

---

**2.** On appeal, Wahl did not challenge the portion of the district court's opinion regarding the use of the electronic-transmitting device by law enforcement officials.

We believe that the district court did not err in denying Wahl's motion to suppress. To begin our analysis, we examine some basic Fourth Amendment tenets.

The Fourth Amendment of the United States Constitution, and Article I, § 8 of the North Dakota Constitution protect individuals from unreasonable searches and seizures. It is well settled that, in the absence of exigent circumstances, a warrantless and nonconsensual entry into a suspect's home for the purpose of conducting a routine felony arrest is a violation of the Fourth Amendment and is, therefore, unlawful.[3] *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); *State v. Nagel*, 308 N.W.2d 539 (N.D.1981). *See also* 1 W. LaFave, *Criminal Procedure* § 3.6 (1984); C. Whitebread, *Criminal Procedure* § 3.04 (1986). Moreover, it is axiomatic that evidence will not be admissible in a criminal trial when it was seized by means of an unlawful arrest. *See I.N.S. v. Lopez–Mendoza*, 468 U.S. 1032, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984); *United States v. Wenzel*, 485 F.Supp. 481 (D.C.Minn.1980); *State v. Wetsch*, 304 N.W.2d 67 (N.D.1981); *City of Wahpeton v. Johnson*, 303 N.W.2d 565 (N.D.1981); *State v. Mees*, 272 N.W.2d 284 (N.D.1978). The exclusionary rule, announced by the United States Supreme Court in *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), requires the suppression of any evidence derived as a result of a violation of the Fourth Amendment's protections against unreasonable searches and seizures. *See Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *State v. Handtmann*, 437 N.W.2d 830 (N.D.1989). The metaphor created by the Supreme Court to describe this evidence is "the fruit of the poisonous tree." *E.g., Nardone v. United States*, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939). Therefore, the exclusionary rule essentially operates as a judicial remedy or sanction against law enforcement intrusion into an individual's Fourth Amendment rights. *Mapp v. Ohio, supra; State v. Riedinger*, 374 N.W.2d 866 (N.D.1985). By excluding evidence seized in violation of the Fourth Amendment, the exclusionary rule acts to deter police misconduct in making unreasonable searches and seizures, and to bolster judicial integrity by not allowing convictions based on unconstitutionally obtained evidence. *See United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3430, 82 L.Ed.2d 677 (1984); *State v. Handtmann, supra. See also* 1 W. LaFave, *Criminal Procedure* § 3.1 (1984); C. Whitebread, *Criminal Procedure* § 2.02 (1986).

■ However, even though evidence may be characterized as fruit of the poisonous tree, the evidence can be admitted if it is shown by the prosecution that the evidence seized was not a product of exploitation of the illegally acquired information. *See* C. Whitebread, *Criminal Procedure* § 2.4 (1986). The "unpoisoning" of the fruit may be effectuated by the prosecution through the use of either the "independent-source exception," "inevitable-discovery exception," or "attenuation exception" to the exclusionary rule. *Id.; see also* 1 W. LaFave, *Criminal Procedure* § 9.3 (1984). The "inevitable-discovery" doctrine, which is a closely related variation of the independent-source exception, provides that evidence derived as a result of a violation of the search and seizure requirements of the Fourth Amendment is not inadmissible as fruit of the poisonous tree if "it is shown that the evidence would have inevitably been discovered without the unlawful action." *See* 1 W. LaFave, *Criminal Procedure* § 9.3 (1984); *State v. Handtmann*, 437 N.W.2d at 837. *See also State v. Thordarson*, 440 N.W.2d 510 (N.D.1989).

■ This Court cautiously adopted the inevitable-discovery doctrine in the fairly recent case of *State v. Phelps*, 297 N.W.2d

---

3. Because the Fourth Amendment was established to "protect[] people, not places," a person's home is deemed "sacred in Fourth Amendment terms not primarily because of the occupant's *possessory* interests in the premises, but because of their *privacy* interests in the activities that take place within." (Emphasis in original.) *Segura v. United States*, 468 U.S. 796, 810, 104 S.Ct. 3380, 3388, 82 L.Ed.2d 599, 612 (1984).

769 (N.D.1980).[4] In *State v. Phelps, supra*, we noted that a mechanical application of the inevitable-discovery doctrine could actually encourage unconstitutional shortcuts by law enforcement officers in gathering evidence, thereby defeating the purposes of the exclusionary rule. *See also State v. Nagel*, 308 N.W.2d at 546. To avoid that effect, we adopted a two-part test to be used in the application of the inevitable-discovery doctrine. In order to claim the benefits of this exception, the State must first demonstrate that the police have not acted in bad faith to accelerate the discovery of the evidence in question and, secondly, must also "prove that the evidence would have been found without the unlawful activity." *State v. Phelps*, 297 N.W.2d at 775. *See also State v. Handtmann, supra; State v. Johnson*, 301 N.W.2d 625 (N.D.1981). Furthermore, we noted that "[a] showing that the discovery might have occurred is entirely inadequate." *State v. Phelps*, 297 N.W.2d at 775; *see also State v. Handtmann*, 437 N.W.2d at 838. This second requirement prevents courts from applying the inevitable-discovery doctrine on the basis of hunches or speculation as to what otherwise might have occurred. 1 W. LaFave, *Criminal Procedure* § 9.3(e) (1984).

■ In the instant case, Wahl argues that the district court erred in applying the inevitable-discovery doctrine because the State did not sufficiently prove a lack of bad faith on the part of the officers in gathering the seized evidence. Wahl also contends that the State did not adquately show that the evidence seized would have been discovered pursuant to the subsequently issued warrant. In this regard, Wahl claims that the warrant was not issued on sufficient probable cause.

However, we believe the suppression hearing transcript demonstrates that the State introduced sufficient evidence to allow the application of the inevitable-discovery exception to the exclusionary rule. With respect to the lack of bad faith, the State introduced evidence at the hearing to show what it believed to be exigent circumstances. Specifically, it introduced police testimony which indicated that the officers thought Wahl was going to leave his apartment with the marked buy money and other possible evidence. While the district court subsequently found that the circumstances argued by the State were not actually exigent, the testimony presented to the court would have allowed it to conclude that the officers were merely mistaken in their belief of exigent circumstances, and that they were not entering the apartment to collect evidence in bad faith. The testimony explicitly indicated that the only reason the police entered the apartment was to detain Wahl until Agent Bazzano could arrive with the search warrant. Furthermore, the police testimony showed that the officers did not specifically conduct a search for evidence while in Wahl's apartment. Rather, the officers simply detained Wahl, made sure that no other person was in the residence, and waited on the living room couch with Wahl for the arrival of Agent Bazzano. Thus, the testimony demonstrates that the officers did not enter Wahl's apartment in bad faith for the purpose of accelerating the discovery of evidence.

Nor do we believe that the district court erred in determining that the evidence seized would have inevitably been discovered pursuant to the subsequently issued warrant. In this regard, Wahl contends that the evidence would not have been validly discovered by the police because there was insufficient probable cause to support the search warrant. Basically, Wahl argues that the informant who supplied the information about Wahl's alleged narcotics activities was untested and unreliable.

■ We have often stated that probable cause to issue a search warrant exists when it is established that certain identifiable objects are probably connected with criminal activity and are likely to be found at an identifiable place. *See State v. Ringquist*, 433 N.W.2d 207 (N.D.1988); *State v. Mondo*, 325 N.W.2d 201 (N.D.

4. For an analysis of the adoption and application of the "inevitable-discovery doctrine" in

North Dakota, *see* Lockney, *Perspectives on State v. Nagel*, 58 N.D.L.Rev. 727, 739 (1982).

1982). In this case, we recognize that Agent Bazzano's affidavit supporting the search warrant for Wahl's apartment did not merely rely upon the informant's initial information regarding Wahl's alleged activities. Significantly, most of Agent Bazzano's affidavit sets forth facts regarding the circumstances of the controlled buy. The affidavit included facts regarding the setup of the controlled buy, the information received from the body transmitter during the controlled buy, and the fact that the informant left the apartment after the controlled buy in possession of packaged cocaine and without the marked buy money. The successfully executed controlled buy, alone, would have given the district court enough information to conclude that the drugs and other items listed in the search warrant probably were to be found in Wahl's apartment. In addition, the search warrant was executed shortly after the controlled buy. Thus, we do not believe that the trial court erred in determining that the evidence would have been inevitably discovered pursuant to the warrant.

Finally, we note that the facts and circumstances of this case, while similar to our previous decision in *State v. Nagel, supra,* reveal firsthand knowledge by the police of Wahl's illegal activities. In *Nagel,* officers unlawfully arrested a defendant inside his residence and observed evidence therein while, at the same time, a separate officer was in the process of obtaining a warrant based upon information acquired by the police before the entry into the residence. In *Nagel,* as in the present case, we noted that the evidence seized by the police would have inevitably been discovered pursuant to the subsequently issued warrant.[5]

As we have found that the district court did not err in applying the inevitable-dis-

covery doctrine, we affirm the order denying the suppression of evidence.

ERICKSTAD, C.J., and LEVINE, MESCHKE and GIERKE, JJ., concur.

---

5. In this case, and in previous cases, we have stated that the inevitable-discovery doctrine is closely related to the independent-source doctrine. *See, e.g., In Interest of M.D.J.,* 285 N.W.2d 558 (N.D.1979). Moreover, there are cases nearly identical to the instant one in which courts have applied the independent-source doctrine to deny the suppression of evidence. *See Segura v. United States, supra* at n. 3; *United States v. Beck,* 662 F.2d 527 (8th Cir.1981).

It appears that the application of after-the-fact doctrines such as "inevitable-discovery," "independent-source," and "attenuation," could be avoided by the use of anticipatory search warrants. The proper use of such warrants would protect individual Fourth Amendment rights, and would also provide law enforcement officers with an effective tool for fighting criminal activity. *See supra* n. 1.